Montgomery, executor, *et al. vs.* The Board of Education of Richmond Co. *et al.*

---

MONTGOMERY, executor, *et al. vs.* THE BOARD OF EDUCATION OF RICHMOND COUNTY *et al.*

| 74 | 41 |
|----|----|
| 97 | 623 |
| 74 | 41 |
| 129 | 264 |

Every question in this case is decided in that of *Smith et al. vs. Bohler et al.*, 72 *Ga.*, 546, except the question of the repeal of the power of the Board of Education of Richmond county to raise funds to carry on public schools by taxation, by the act of September 17, 1883.

(a.) The act of 1872, conferring on the Board of Education of Richmond county power to raise funds to carry on public schools by an assessment of taxes upon the property of the inhabitants of that county and other property within its limits subject to state and county tax, was not repealed by the act of September 17, 1883, entitled "An act to constitute the judge of the city court in the county of Richmond *ex officio* commissioner of roads and revenues, to define his powers and duties, and for other purposes."

(*b.*) Repeals by implication are not favored, and never occur except where the later act is clearly and indubitably contradictory and contrary to the former act, and the repugnance is such that the two cannot be reconciled. Under the constitution of 1877, it is questionable whether repeals by implication exist at all in this state.

February 7, 1885.

. Richmond County. Education. Tax. Laws. Constitutional Law. Before Judge RONEY. Richmond Superior Court. October Term, 1884.

The plaintiffs filed their bill to enjoin the collection of the tax of two and three-tenths mills on each dollar of property in Richmond county as a school tax, under an assessment made by the board of education of that county. The general nature of this tax, and the resistance thereto, may be seen in the report of the case of *Smith et al. vs. Bohler et al.*, 72 *Ga.*, 546. Many points were made, but it is only necessary to an understanding of the decision to state that one was, that the sixteenth section of the act of 1872 had been repealed by the act of 1883. (See acts 1872, p. 462; acts 1882–3, p. 528.)

The injunction was refused, and complainants excepted.

HOOK & MONTGOMERY, for plaintiffs in error.

J. S. & W. T. DAVIDSON; CHAS. Z. MCCORD, for defendants.

HALL, Justice.

In *Smith et al. vs. Bohler et al.*, 72 *Ga.*, 546, we determined every question raised and argued in the present case, except the question now made and insisted upon of the repeal of the power of the Board of Education of Richmond county to raise funds to carry on public schools by an assessment of taxes upon the property of the inhabitants of that county, and other property within its limit subject to state and county tax, by the act

of September 17th, 1883, entitled "An act to constitute the judge of the city court in the county of Richmond *ex officio* commissioner of roads and revenues, to define his powers and duties, and for other purposes." This act, it is insisted, by its terms confers on him exclusive jurisdiction over county taxation, and that this school tax was decided by this court in *Smith et al. vs. Bohler et al.* to be, in its most comprehensive sense, a county tax; that the judge of the city court in Richmond county has over this subject all the power and authority formerly conferred on the inferior court, and after that ceased to exist, then on the ordinary, and subsequently on the commissioners of roads and revenues; that each of these tribunals, in its turn, exercised the power of levying taxes for educational purposes, until in 1872 this power was given to the board of education of that county; that the act of 1883 divested this board of the authority, by implication, and conferred it upon the judge of the city court.

The act establishing that court was approved September 22d, 1881, and by the 41st section thereof, the judge of said court was made *ex officio* commissioner of roads and revenues of the county, and was charged with all the duties formerly devolved on the justices of the inferior court as to county business. In the case of *Whittendale vs. Dixon & Brother*, 70 *Ga..* 721, this court expressed a doubt as to the constitutionality of this portion of the act, because of its variance from the title of the act, and because the act itself referred to more than one subject-matter.. This suggestion seems to have occasioned the sole necessity for the passage of the act of September 17th, 1883. The preamble recites (acts, 1882–3, p. 528), 1st, these doubts; 2d, that the grand jury, at the April term, 1883, of the superior court, recommended a separate act creating and continuing the judge as commissioner of roads and revenues; and 3d, that his powers and duties as such commissioner should be the same as were " imposed on

him by the city court act, or now exercised by him."
It seems that the judge, as commissioner, never exercised,
under the city court act of 1881, nor under that which
succeeded it, any power over the revenue of the county
for educational purposes; that the grand jury never re-
commended that such power be vested in him; and that
now 'he neither endeavors nor desires to oust the board of
education of this jurisdiction, and to assume it himself.
In the *Central R. R. vs. Hamilton*, 71 *Ga.*, 461, we
suggested a doubt, if such a thing as a repeal by im-
plication cold exist under that provision of our constitu-
tion, which declares that " no law or section of the Code
shall be amended or repealed by mere reference to its
title, or to the number of the section of the Code, but the
amending or repealing act shall distinctly describe the
law to be amended or repealed, as well as the alteration to
be made." The constitution of 1868 had made this clause
only directory to the general assembly; whereas that of
1877 seems to make it mandatory. This alteration in the
character of the provision was doubtless made by the con-
vention of 1877, with a view to obstruct, if not to extirpate,
evils which had grown up under this discretionary power
implied and exercised by the legislature under the direc-
tory character of the clause in the constitution of 1868.
The doubt suggested in the case of the *Central R. R. vs.
Hamilton* was not the hasty doubt of the member of the
court delivering that opinion, as was asserted by counsel
in argument; it was entertained by each member of the
court, and was expressed, upon deliberation, after an able
argument by learned and experienced counsel. The point
was not decided, because it was not indispensable to the
determination of the case then before us, as it is not in this
case. Irrespective of constitutional restrictions, and rely-
ing solely on the general rules of construction that obtain
in such cases, there was not there, as we will show there
is not here, any substantial ground for implying a repeal or
modification of the former statute.

After showing that there are only two modes of repealing law, by "express words" or by "necessary, irresistible implication," Dwarris says: "Every affirmative statute is a repeal of a precedent affirmative statute, where its matter necessarily implies a negative, but only so far as it is clearly and indubitably contradictory and contrary to the former act 'in the very matter' (Foster's case, 11 Coke, 63 a), and the repugnancy is such that the two acts cannot be reconciled, for then, '*leges posteriores priores contrarias abrogant.*'"

The leaning of the courts is so strong against repealing the positive provisions of a former statute by construction as almost to establish the doctrine of "no repeal by implication." (When the imperative provision of our constitution is added to this strong inclination, may it not quite establish that doctrine?) "But," continues our author, "this goes beyond the limits of Foster's case, that such repeal is not to be favored;" and in a recent case, Lord Denman said, "While we hold that a positive enactment is not to be restrained by inference, we must also act on the maxim, *leges posteriores*, etc., whenever it comes in operation," citing Reg. *vs.* Inhabitants St. Edmund's Salisbury, 2 Q. B. R., 84; Potter's Dwarris, and the large number of American cases cited in note 4 there. Again, the same commentator says, *Id.*, pp. 156, 157, 158, "Nor hath a later act of parliament ever been construed to repeal a prior act, unless there be a repugnancy or contrariety in them, or at least some notice taken of the former act, so as to indicate an intention in the law-giver, to repeal it. Neither is a bare recital in a statute, without a clause of repeal, sufficient to repeal the positive provisions of a former statute. The law does not favor a repeal by implication, unless the repugnance be quite plain, and such repeal carrying with it a reflection on the wisdom of former parliaments, it has ever been confined to repealing as little as possible of the preceding statute. Although, then, two acts of parliament are seemingly repugnant, yet if there be no clause of *non*

*obstante* in the latter, they shall, if possible, have such construction that the latter may not be a repeal of the former by implication. The same view has been taken, where powers under several acts are such as may well subsist together." Again, " When there is a difference in the whole purview of two statutes, apparently relating to the same subject, the former remains in force."

At last, the question of whether a former affirmative statute is to be considered as repealed by a subsequent act, depends upon the intention of the legislature to accomplish that result, which intention is to be gathered by an appeal to well settled rules of construction. Those above recited are as old as the time of Lord Coke, and will be found in Foster's case.

The tax in question, in its most comprehensive sense, may be classed as a county tax, but while this is true, it is not necessarily ranked with the tax raised to carry on the ordinary and indispensable business of the county; it is a particular tax, levied for a special purpose, as distinguished from such as is assessed for usual and necessary purposes. The board of education had exercised this power for nine years previous to the creation of the city court in Richmond county, and its authority over the subject does not seem during all that time to have been questioned. Even after that act it was acquiesced in. There being doubts, however, as to the constitutionality of the act, so far as respects the power thereby conferred upon the judge of that court to manage the county business, it became necessary to remove that doubt, and the act of 1883 was passed for that purpose only. This latter act contains no allusion whatever to the former school board act; there is a manifest difference in the whole purview of both the statutes; they do not apparently relate to the same, but to different subjects; one deals with a special system of education, the other with the management of the ordinary business of the county; they are not necessarily repugnant to each

other, and the powers conferred by each may well subsist together.

Each one of these canons of construction has been recognized and applied by this court in decisions rendered prior to the adoption of the constitution of 1877. In *Erwin vs. Moore et al.*, 15 *Ga.*, 361, 364, 365, 366, the subject is discussed with learning and ability by Starnes, J., and the conclusions we have reached in this instance are there maintained with an irresistible force of logic and authority. The same may be affirmed of the clear and able judgment pronounced for the court by the late Chief Justice Warner, in *Patillo vs. The State*, 49 *Ga.*, 173, 175. When to these cases we add the clause of the constitution prescribing what the legislation shall contain, to amend or repeal a former law, we are forced to the conclusion that there is nothing in the act of the 17th of September, 1883, tending to show that it was the purpose of the legislature thereby to repeal or modify in any respect the act of the 23d of August, 1872. There was, therefore, no error in refusing an injunction to restrain the collection of the tax imposed by the Board of Education of Richmond county under the provisions of the latter act.

Judgment affirmed.