MOORE *et al. v.* BALDWIN COUNTY *et al.*

542

No. 18099. Argued January 14, 1953—Decided February 9, 1953—
Rehearing denied February 25, 1953.

*Hall & Bloch, Bloch, Hall, Groover & Hawkins,* and *Stephen
T. Bivins,* for plaintiffs in error.

*Marion Ennis* and *Eva L. Sloan,* contra.

*Eugene Cook, Attorney-General, Chas H. Bruce, Assistant At-
torney-General, M. H. Blackshear Jr.,* for parties at interest, not
parties to record.

Candler, Justice. Frank D. Moore and others, alleging them-
selves to be residents, citizens, and taxpayers of Baldwin Coun-
ty, brought an action for injunction against Baldwin County,
its Commissioners of Roads and Revenues, and the Clerk of
the Commissioners. The petition was in three counts. The de-
fendants filed demurrers, general and special, to the petition as
a whole and to each count. The court sustained the general
demurrers to the petition as a whole and to each count thereof
as amended, and dismissed the petition. The plaintiffs excepted.
Query: 1. Under the statutory law of Georgia as it now stands,
and under the Constitution of 1945, does a county of the State
of Georgia have a legal right to expend county funds for the
erection of a public works or convict camp? 2. If a county
has such right, are the allegations of count 2 of the petition suffi-
cient to authorize a jury to find that the County Commissioners
of Baldwin County abused their discretion in proposing to erect
and maintain a public works or convict camp at the place de-

scribed in the petition? And 3. Even if the County Commissioners of Baldwin County have the legal right to expend county funds for the erection of a public works or convict camp, and even if they have not abused their discretion in building and locating a camp at the place described in the petition, would not a jury be authorized to find, upon proof of the allegations of count 3 of the petition, that the erection and maintenance of a public works or convict camp at the place selected by the commissioners would be a nuisance? We shall consider and dispose of these questions in the order of their statement.

■ Our penal system evolves from many statutes. It would be burdensome and, as we perceive, an unnecessary task to presently recount their many provisions. However, as they relate to the question here involved, it may be safely asserted that, prior to the Constitution of 1945, and prior to the creation of the State Board of Corrections in 1946, each county of this State was clothed with ample authority to use its misdemeanor convicts and those assigned to it, in the construction of its public roads and for other authorized county purposes. Incident to this right, was the power and the duty of the county to make, at its expense, proper provision for their support, care, and safe-keeping, including, of course, necessary convict camps or housing facilities. Beginning with little, but with an ever-increasing concern, the State has at all times by statutory authority exercised some control and supervision over the keep, care, and welfare of county-employed convicts. See, in this connection, Titles 77 and 95 of the Code of 1933; *Pennington* v. *Gammon,* 67 *Ga.* 456; *Garrison* v. *Perkins,* 137 *Ga.* 744 (74 S. E. 541); *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (2) (91 S. E. 681); *Williams* v. *Sumter County,* 21 *Ga. App.* 716 (94 S. E. 913); and *Oliver* v. *Hall County Memorial Hospital,* 62 *Ga. App.* 95 (1) (8 S. E. 2d, 138). The Constitution of 1945, by article 5, section 5, paragraph 1, in part, provides: "There shall be a State Board of Corrections composed of 5 members in charge of the State penal system. The Board shall have such jurisdiction, powers, duties, and control of the State penal system and the inmates thereof as shall be provided by law." Code (Ann.), § 2-3401. Pursuantly, the General Assembly created a State Board of Corrections by an act approved February 1, 1946 (Ga.

L. 1946, p. 46). Section 6 of that act, in part, provides: "The State Board of Corrections shall adopt rules governing the assignment, housing, working, feeding, clothing, treatment, discipline, rehabilitation, training, and hospitalization of all prisoners coming under its custody. The Board may also adopt rules and regulations governing the conduct of/or the welfare of employees of the State institutions operating under its authority in the county public works camps and State Highway camps operating under its supervision." Section 11 provides: "From and after the passage of this Act all persons convicted of crime, either misdemeanor or felony, in any courts of this State, shall be by the Courts first assigned to the State Board of Corrections for specific assignment. The State Board of Corrections is hereby given complete supervision and control of all persons convicted of crime, misdemeanor or felony, in the Courts of the State, and the Board is hereby given the authority to assign, transfer, and place all such persons in such prisons, public works camps, State Highway camps, penitentiary, hospitals, or other institutions of confinement located in the State of Georgia and coming under its jurisdiction, as the Board shall deem to be in the best interest of the prisoner, to the State, and to its subdivisions. The Board may adopt rules and regulations for the handling of all prisoners and may delegate its authority to assign same to the Director of Corrections, if the Board deems advisable." Section 13, in part, provides: "The State Board of Corrections shall have the authority to approve the establishment of county public works camps, and abolish such camps. Each county maintaining a county camp shall receive a quota of prisoners in accordance with such methods of apportioning as may be established by the State Board of Corrections. The State Board of Corrections shall have the authority to cause persons convicted in one county to serve in any other county of the State, and any county shall have the right, with the approval of the State Board of Corrections, to deliver its quota of felony and misdemeanor prisoners to the State Board of Corrections or one of the institutions operating under its authority." Section 15, in part, provides: "When prisoners are assigned to a county camp or a Highway camp, the expenses of transportation from the point of conviction, or from the receiving station,

shall be borne by the county or the State Highway authorities of the camp receiving the prisoners. . . When a prisoner is discharged at the expiration of his sentence, or is conditionally released or paroled from a county camp, or a State Highway camp, the transportation and clothing enumerated [previously in this act] shall be furnished by the county or the State Highway Department." Section 18 provides: "The State Board of Corrections shall establish and fix qualifications for wardens, guards and correctional officials. The various wardens, guards and other employees in county public works camps and Highway camps shall be chosen by the proper county and Highway officials, subject to the approval of the State Board of Corrections, and the salaries of all such employees shall be fixed and paid by the proper county and Highway authorities." And section 31 provides: "That all laws and parts of law in conflict with this Act, be, and the same are, hereby repealed." The act of 1946 does not in terms expressly repeal any prior act of the legislature.

But it is here contended that the several counties of this State, since the State Board of Corrections was created in 1946, do not have a legal right to a quota of convicts from the State for county uses, and a right to erect and maintain, at county expense, a public works or convict camp. It is argued that a county's right to such was impliedly repealed by the act of 1946. To this we do not agree. Repeals by implication are not favored by law, and a subsequent statute repeals prior legislative acts by implication only when they are clearly and indubitably contradictory, when they are in irreconcilable conflict with each other, and when they cannot reasonably stand together. *Montgomery* v. *Board of Education of Richmond County*, 74 *Ga.* 41; *State Board of Education* v. *County Board of Education of Richmond County*, 190 *Ga.* 588 (2) (10 S. E. 2d, 369) ; *Morris* v. *City Council of Augusta*, 201 *Ga.* 666 (40 S. E. 2d, 710) ; *Collier* v. *Mitchell*, 207 *Ga.* 528 (63 S. E. 2d, 338). However, it is the duty of the courts in the construction of statutes to give effect to the intention of the legislature when it is ascertainable (*Thompson* v. *Eastern Air Lines*, 200 *Ga.* 216, 222, 39 S. E. 2d, 225) ; and in construing laws, whether statutory or constitutional, proper regard should be given to the old law, the evil,

and the remedy. *Walsh* v. *City Council of Augusta,* 67 *Ga.* 293 (1a); *Demere* v. *Germania Bank,* 116 *Ga.* 317, 318 (42 S. E. 488); *Georgia Railroad & Bkg. Co.* v. *Wright,* 124 *Ga.* 596, 626 (53 S. E. 251). While it is true that the act of 1946 which created the State Board of Corrections, and which defined its jurisdiction, powers, and duties, materially increased the State's control of and supervision over convicts and also changed the State's method of ascertaining and allotting a quota of convicts to the several counties; yet, after a careful examination and consideration of the act, we cannot bring ourselves to believe that it was the intention of the legislature to divest the counties of their existing statutory right to a quota of convicts for specified county uses, and we, accordingly, hold that it was not, it being clear to us that the act of 1946 is not in conflict with prior legislative acts which vested the right in the counties. Since Baldwin County, therefore, has a right to a quota of convicts to be employed upon its public roads and for other authorized county uses, the county has corresponding power and duty to make, at its expense, proper provision for their support, care, and safe-keeping, including, of course, necessary camp or housing facilities. And in an exercise of its supervisory powers over county public works or convict camps, the State Board of Corrections may not arbitrarily refuse to approve a county's convict or public works camp and deny to it an assignment of its quota of convicts; nor, in like manner, abolish a county's convict or public works camp and withdraw an assignment of convicts therefrom. Hence the Commissioners of Roads and Revenues of Baldwin County have ample authority to expend county funds in the construction and maintenance of a county convict or public works camp. Therefore, count 1 of the petition failed to state a cause of action and was subject to general demurrer. *Pennington* v. *Gammon,* and *Garrison* v. *Perkins,* both supra.

■ ■ These headnotes do not require elaboration.

Since neither the petition as a whole nor any count thereof stated a cause of action for the relief sought, it was properly dismissed on general demurrer. Accordingly, the record shows no error.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., and Wyatt J., not participating; and Head, J., disqualified. Duckworth, C. J., concurs in the judgment only.*