34323. EVANS et al. v. JUST OPEN GOVERNMENT (JOG) et al.
34324. TINGLE et al. v. JUST OPEN GOVERNMENT (JOG) et al.
34325. McGARITY et al. v. JUST OPEN GOVERNMENT (JOG) et al.

MARSHALL, Justice.

Plaintiff, Just Open Government (JOG), an unincorporated association of citizens, taxpayers, voters,

and property owners in Henry County, brought this suit against the Department of Offender Rehabilitation (DOR) of the State of Georgia, including the commissioner and deputy commissioner thereof; the State Properties Commission, including the Governor, who is the chairman thereof; the Henry County Board of Commissioners; and the County Attorney for Henry County. The complaint states that the various governmental officials are being sued individually and in their official capacities.

The plaintiffs object to the construction of two state prisons, which will be located in the unincorporated area of Henry County in the Henry County Residential/Industrial Park.

The course of events leading to the decision to construct the prisons in Henry County is as follows:

In January of 1978, the General Assembly appropriated funds for the planning and land acquisition for two new penal institutions in the Atlanta area. Supplemental Appropriations Act for the fiscal year 1977-78 (Ga. L. 1978, pp. 10, 140).

In May of 1978, DOR began considering Henry County as a possible site for one of these prisons. The county attorney, on behalf of himself and others, began purchasing property in the Henry County Residential/Industrial Park, and he later executed options to purchase a 50-acre and a 30-acre tract to the Deputy Commissioner of DOR on behalf of the commissioner.

On May 25, 1978, the Henry County Board of Commissioners passed a resolution approving construction of a minimum security prison in the residential/industrial park. This resolution was passed at a special meeting without notice to the public. After news of the plans to construct a state prison in Henry County was released, many of the residents of Henry County voiced objections. The McDonough City Council, on June 5, 1978, adopted a resolution that the county board of commissioners submit the question to a public referendum. Subsequently, the county commission rescinded its prior approval of the construction of the prison and recommended that the question be submitted

to public referendum.

However, on June 21, 1978, DOR announced plans to construct two state prisons in the Henry County Residential/Industrial Park, a 200-inmate, medium-security, female prison and a medium-security, male prison. On June 28, 1978, the State Properties Commission adopted a resolution approving funding of these prisons.

The plaintiffs filed this suit in the Henry Superior Court on July 30, 1978. Primarily, the plaintiffs requested that the county commissioners' approval of the prison be overturned, that the state's deeds to the property be canceled, that the state officials be enjoined from applying for building permits to construct the prisons until zoning hearings could be conducted, and that construction of the prisons be enjoined on the ground that they will be nuisances per se and nuisances per accidens.

On August 1, the trial court entered an ex parte temporary restraining order against the defendants. The court ordered the defendants to appear and show cause at a hearing scheduled for August 4 why an interlocutory injunction should not be issued. On August 31, the trial judge entered an order denying the various defendants' motions to dismiss and continuing in effect the temporary restraining order until further order of the court. This appeal follows. *Held:*

For several reasons, we hold that the trial court erred in continuing in effect the temporary restraining order. First, state-owned governmental property, whether acquired by bargain and sale or through eminent domain proceedings, is not subject to local zoning ordinances.[1] Second, the state executive officials are being sued for an abuse of discretion and breach of authority in locating the prisons at their present sites in Henry County; the record affirmatively shows that there was no breach of authority[2] and, furthermore, it has been held that the courts will not by injunction interfere with state executive officials in the exercise of their discretionary powers.[3] Thirdly, a

[1]See Division 1, infra.
[2]See Division 2, infra.
[3]See Division 3, infra.

prison is not, in a legal sense, a nuisance, and equity will not enjoin construction of a prison on that ground[4]—the foregoing is really an application of the rule that the courts will not enjoin erection of a public work at the behest of someone whose property is not actually taken.[5] Fourthly, the plaintiffs have not been damaged in any legally cognizable sense, as it is also held that those owning property in the vicinity of a public work, whose property values are depreciated thereby, are not entitled to compensation under the state constitutional provision that private property shall not be taken or damaged for public use without just compensation.[6]

1. The trial judge reasoned that since the state officials had acquired this property by bargain and sale rather than through eminent domain proceedings, the property is subject to the zoning ordinances of the county in the same manner as land owned by a private citizen. It is on this basis that the trial court enjoined the defendants from applying for building permits to construct the prisons until zoning hearings could be conducted.

This ruling of the trial court overlooks the decision of this court in *Mayor &c. of Savannah v. Collins,* 211 Ga. 191 (1) (84 SE2d 454) (1954), wherein it was held that since a municipality has the right to condemn private property for a necessary governmental use, though it be located in an area zoned for other and different uses, it necessarily follows that it may use the property for a necessary governmental use which it has acquired by purchase. See also *West v. Housing Auth. of City of Atlanta,* 211 Ga. 133 (84 SE2d 30) (1954); *McCallum v. Bryant,* 211 Ga. 98 (84 SE2d 39) (1954). The ruling in *Mayor &c. of Savannah v. Collins,* supra, was applied in *Pearson v. County of Tift,* 219 Ga. 254 (132 SE2d 710) (1963) so as to insulate property owned by the county for governmental purposes from municipal zoning ordinances. A fortiori, these decisions require a holding that property owned by the state for governmental

---

[4]See Division 4, infra.
[5]See Division 5, infra.
[6]See Division 6, infra.

purposes is immune from local zoning ordinances.

2. The plaintiffs argue that the decision of DOR, approved by the State Properties Commission, to locate the prisons at their present sites in Henry County violates the terms of the appropriations Act, which specifies that the prisons are to be in the Atlanta area. However, the record affirmatively shows that Henry County is considered to be a part of the Atlanta Standard Metropolitan Statistical Area.

3. It has been held that state executive officials exercising functions in which they have discretionary powers cannot be reached by injunction. *Southern Mining Co. v. Lowe,* 105 Ga. 352 (31 SE 191) (1898); *Peeples v. Byrd,* 98 Ga. 688 (25 SE 677) (1896); *Scofield v. Perkerson,* 46 Ga. 325 (1872).[7] It can be thusly seen that the complaint against the state executive officials is barred by the doctrine of sovereign immunity. "A suit can not be maintained against the State without its statutory consent. This general rule can not be evaded by making an action nominally one against the servants or agents of a State, when the real claim is against the State itself and it is the party vitally interested. Therefore, generally, where a suit is brought against an officer or agency of the State with relation to some matter in which the defendant represents the State in action and liability, and the State, while not a party to the record, is the real party against which relief is sought, so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the State, will operate to control the action of the State or subject it to liability, the suit is in effect one against the State." *Cannon v.*

---

[7]A reading of the foregoing cases shows that this rule (that the courts will not enjoin state executive officials in the exercise of functions in which they have discretionary powers) is closely aligned with, if not a part and parcel of, the doctrine of sovereign immunity. In view of this court's decision in *Azizi v. Board of Regents,* 233 Ga. 487 (212 SE2d 627) (1975) that the doctrine of sovereign immunity has attained constitutional status in this state, we do not feel at liberty to reconsider the correctness of this rule.

*Montgomery,* 184 Ga. 588, 591 (192 SE 206) (1937) and cits. Accord, *Peters v. Boggs,* 217 Ga. 471, 473 (123 SE 258) (1961); *Maddox v. Coogler,* 224 Ga. 806, 809 (165 SE2d 158) (1968). "It is difficult to describe in advance every action or suit against an officer or agent of the State that should be classified as an action against the State. The general rule that is applicable in all cases is that any case, regardless of who are named parties thereto, that could result in a judgment or decree that would in any manner affect or control the property or action of the State, in a manner not prescribed by statute, is a suit against the State and can not be brought without her consent. [Cits.]" *Roberts v. Barwick,* 187 Ga. 691, 695 (1 SE2d 713) (1939). That the present suit is indubitably one against the state is demonstrated by the fact that one of the primary prayers for relief is cancellation of deeds in which the state is named as grantee. To obtain a judgment decreeing title to land to be in someone else when the deed to the land shows title to be in the state, can not be done, since the grantee, the state, can not be sued. *Linder v. Ponder,* 209 Ga. 746 (75 SE2d 814) (1953).

4. "It is true that nobody would be pleased at the erection of a jail in the vicinity of his residence, but it must be built somewhere. It is a public necessity. It is authorized by law. In no sense, or rather in no legal sense, is it a nuisance. Nothing that is legal in its erection can be a nuisance per se; much less can that which public necessity demands be one. Possibly the manner of its being kept might become so, but the courts will not indulge in conjectures or imaginary fear or uncertain apprehension, and upon such ideas or imaginations stop a public necessity from being built." *Bacon v. Walker,* 77 Ga. 336, 338 (1886); *Long v. City of Elberton,* 109 Ga. 28, 31 (34 SE 333, 77 ASR 363, 46 LRA 428) (1899). Accord, *Moore v. Baldwin County,* 209 Ga. 541 (74 SE2d 449) (1952).

5. Article I, Sec. III, Par. I of the state Constitutions prior to 1877 had generally provided that private property shall not be taken for public use without just compensation. In 1877, this constitutional provision was amended, so as to provide, "Private property shall not be taken *or damaged* for public purposes, without just and

adequate compensation being first paid." (Emphasis supplied.)

In *City of Atlanta v. Green,* 67 Ga. 386 (1881), this court held that this entitled a property owner to consequential damages resulting to his property from the municipality's raising or lowering the grade of a public street, the damages to be measured by the depreciation in the value of the property. However, in *Moore v. City of Atlanta,* 70 Ga. 611 (1882), it was held that the court would not by interlocutory injunction interfere with the erection of a public work in which no part of the property of the citizen is actually taken. This has been the settled law of this state ever since. *Dept. of Transportation v. Roberts,* 241 Ga. 433 (246 SE2d 293) (1978); *State Hwy. Dept. v. Strickland,* 213 Ga. 785 (102 SE2d 3) (1958); *Fleming v. City of Rome,* 130 Ga. 383 (61 SE 5) (1908); *Brown v. Atlanta R. &c. Co.,* 113 Ga. 462 (39 SE 71) (1901).

6. In *Austin v. Augusta Terminal R. Co.,* 108 Ga. 671 (34 SE 852, 47 LRA 755) (1899), it was held that the word "damages," as used in Art. I, Sec. III, Par. I of the state Constitution, does not require compensation to be paid to the owner of the real property for a depreciation in the value of his property caused by the lawful operation of a public work. By way of dicta, the court in *Pause v. City of Atlanta,* 98 Ga. 92, 99 (26 SE 489) (1895) had stated, "There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law does not, and has never afforded any relief. For instance, the building of a jail, police station or the like, will generally cause a direct depreciation in the value of neighboring property, yet it is clearly a case of damnum absque injuria." In *Austin v. Augusta Terminal R. Co.,* supra, the court, citing the *Pause* case, stated that a depreciation in property value caused by the erection of a police barracks or jail in the vicinity of a residential area is damnum absque injuria.[8] Accord, *Bacon v. Walker,* 77

---

[8]Certain dicta in *Austin v. Augusta Terminal R. Co.,* and *Pause v. City of Atlanta,* as well as several other cases,

Ga. 336, supra. Stated the court, " 'Any other construction would open the doors to claims of so wide and indefinite a character as could not have been in the contemplation of the legislature.' " 108 Ga. at p. 679.

7. The plaintiffs in this case seek to attack the county commissioners' resolution approving construction of a state prison in Henry County on the ground that failing to publish notice of the meeting violated the state Sunshine Law. This prayer for relief overlooks the fact that the county commissioners' approval has been rescinded and is now moot. In any event, local approval for construction of the prisons, although it may, as a practical matter, have been a political necessity, was in no way required under the law. Accordingly, the complaint against the county commissioners, the county attorney, and the other sellers of property to the state should have been dismissed for failure to state a claim for relief.

8. The plaintiffs have not made any kind of showing that the property was acquired fraudulently, and, since title to the property is in the state, the state can not be divested of title because it clearly can not be sued. *Linder v. Ponder,* 209 Ga. 746, supra. The state governmental officials are authorized to dedicate the property owned by the state to any lawful use (*Linder v. Ponder,* supra) and maintenance of a prison by the state is a lawful use of property. Cf. *Moore v. Baldwin County,* 209 Ga. 541,

---

was disapproved in *Bowers v. Fulton County,* 221 Ga. 731, 737 (146 SE2d 884) (1966) insofar as it was indicated that damages to a condemnee's business, which are caused by the condemnee's being compelled to move his business, could not be recovered as separate and independent items of just and adequate compensation for the condemnee's property being taken for public use.

In *Duffield v. DeKalb County,* 242 Ga. 432 (249 SE2d 235) (1978), we have recently held that where a county is guilty of maintaining a nuisance which results in an inverse condemnation of property by unlawfully interfering with the right of the property owner to enjoy possession of his property, the property owner is constitutionally entitled to be paid damages.

supra; *Long v. City of Elberton,* 109 Ga. 28, supra; *Bacon v. Walker,* 77 Ga. 336, supra.

9. The plaintiffs raise a wide variety of other constitutional arguments, contending that the decision to locate the prison in Henry County violates constitutional guarantees ranging from the Magna Carta to the First Amendment to the United States Constitution to the Civil Rights Acts of 1871. None of these arguments, however, withstands scrutiny.

10. Under settled decisions of this court, the complaint failed to state a claim for relief against any of the defendants, and the trial court erred in failing to dismiss it.

*Judgment reversed. All the Justices concur, except Nichols, C. J., and Hill, J., who concur specially.*

ARGUED NOVEMBER 20, 1978 — DECIDED JANUARY 4, 1979.

*Arthur K. Bolton, Attorney General, William C. Joy, Assistant Attorney General, Larry H. Evans, Special Assistant Attorney General,* for appellants (Case No. 34323).

*Edward W. Killorin, William H. Schroder, Jr., Harold G. Clarke,* for appellees (Case No. 34323).

*Arch W. McGarity,* for appellants (Case No. 34324).

*Harold G. Clarke, Larry H. Evans, Harvey J. Kennedy, Jr., Alfred D. Fears, Killorin & Schroder, William H. Schroder, Jr.,* for appellees (Case No. 34324).

*Floyd M. Buford, Alfred D. Fears, Harvey J. Kennedy, Jr.,* for appellants (Case No. 34325).

*Larry H. Evans, Arch W. McGarity, Killorin & Schroder, Harold G. Clarke,* for appellees (Case No. 34325).

HILL, Justice, concurring specially.

The majority holds that (a) state owned governmental property is not subject to local zoning ordinances (Division 1), (b) the expenditure of state funds to construct these prisons in Henry County does not violate the appropriations Act (Division 2), (c) a prison is not a nuisance per se (although its operation might make it so)

and hence its construction will not be enjoined (Division 4), (d) a property owner whose property is not condemned (i.e., taken) cannot enjoin the construction of a public work (Division 5) and cannot recover damages for the loss in value of his property caused by the public work (Division 6), and (e) the state is not required by law to obtain the approval of a county to construct a prison within the county (Division 7).

In passing, the majority also rely upon the doctrine of sovereign immunity (Division 3). That reliance is, I respectfully submit, mere dicta, repeated time and again out of habit rather than analysis. This case can and should be dismissed on grounds (a) through (e) above (Divisions 1-9, except 3) without reference to sovereign immunity. If the sovereign immunity defense was sufficient, then it would not be necessary to discuss a half dozen other defenses.

Sovereign immunity is treated in this case as an independent basis for dismissal whereas it is actually dependent upon the other conclusions. That is to say, if the law were otherwise than as stated in Divisions 1, 2, 4, 5, 6 and 7, then there would be no sovereign immunity here.

For example, let us suppose that the rule were contrary to that stated in Division 6; i.e., suppose that the rule is that a property owner whose property is adjacent to a public work can recover damages for the depreciation in value of his property caused by the public work even though no part of his property is condemned. That is not the law but it could be under Code Ann. § 2-301.

However, if that were the law, clearly there would and could be no sovereign immunity from paying the damages required by that rule. Similarly, there would be no sovereign immunity from expending state funds in violation of the appropriations Act. See *State of Ga. v. MacDougall,* 139 Ga. App. 815 (229 SE2d 667) (1976), affirmed, *MacDougall v. State of Ga.,* 238 Ga. 406 (233 SE2d 378) (1977). Although I agree with the majority opinion except as to Division 3, that division is mere boilerplate and should not be considered as correct if in building these prisons the state were violating either the Constitution or laws of this state.

So long as the state and its officials obey the

Constitution and law they are immune from liability but neither the state nor its officials can violate the Constitution or law and successfully claim immunity. If they can, then the Constitution which was created to protect the people is incapable of doing the job it was designed to do. I reject the proposition which the majority impliedly adopt that the state and its officers cannot be required to obey the law.