**George Henson MIREE et al.**

v.

**UNITED STATES of America et al.**

Civ. No. 19293 and Nos. 19412, C74–24A, C74–291A, C74–1069A, C74–1074A, C74–1272A, C75–218A and C75–320A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 20, 1980.

Hugh M. Dorsey, Jr., Michael Brooks, Jule W. Felton, Jr., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., Gilbert E. Johnston, Birmingham, Ala., for plaintiffs Miree.

Claude R. Ross and Baxter H. Finch, A. Russell Blank, Ross & Finch, Atlanta, Ga., for plaintiff Phillips.

J. Arthur Mozley, Phillips, Hart & Mozley, Atlanta, Ga., for Fireman's Fund, Southeast Machinery, and Semac Industries.

Joe C. Freeman, Jr., Richard P. Schultz, Paul M. Hawkins, Freeman & Hawkins, Atlanta, Ga., Kevin S. King, Trauner, King & Cohen, Atlanta, Ga., for plaintiffs Fields and Local Properties.

Herbert S. Falk, Jr., Falk, Carruthers & Roth, Greensboro, N. C., for plaintiffs Fields and Howard & C&S, et al.

Robert W. Patrick and Robert M. Travis, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for plaintiff Sellfors.

George H. Freisem, III, Glover McGhee, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for plaintiffs Howard, Nicholson, et al.

Alan J. Konigsberg, Milton G. Sincoff, Donald Kreindler, Kreindler & Kreindler, New York City, Stanley E. Galkin, Atlanta, Ga., for plaintiffs Howard & C&S, et al.

N. Forrest Montet, Montet & Smith, Atlanta, Ga., for defendant Machinery Buyers.

Cecile Hatfield, George M. Fleming, Burton Lee, Nicholas Gilman, Trial Attys., Torts Branch, Civil Division, U. S. Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Douglas P. Roberto, William D. Mallard, Asst. U. S. Attys., Atlanta, Ga., for United States.

Meade Burns, J. M. Hudgins, IV, Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for defendants Manget and DeKalb County.

George Dillard, Decatur, Ga., for defendant DeKalb County.

### ORDER

O'KELLEY, District Judge.

Following a tragic airplane accident at DeKalb-Peachtree Airport in which all seven persons on board were killed and one bystander seriously injured, a host of complaints, counterclaims, cross-claims, and third-party complaints were filed separately by and against all those even remotely connected with the incident. A number of plaintiffs commenced their suits against, among others, the United States and DeKalb County, accusing the two of negligence in the operation of the airport. They further alleged that DeKalb County was liable for the maintenance of a nuisance and for the breach of the provisions of its grant agreements with the United States, which required the county to operate the airport safely in return for federal funds to help finance improvements on airport

grounds. DeKalb County later moved to dismiss these claims on the ground that it was immune from suit under Georgia law. These related suits all came to a virtual standstill, except for completion of discovery, while this court, the Fifth Circuit Court of Appeals, the United States Supreme Court, and the Georgia Supreme Court decided whether DeKalb County, as a political subdivision of the state of Georgia, could be sued by these private plaintiffs. This court held that the county was immune, *Miree v. United States*, No. 19293 *et al.* (N.D.Ga. June 27, 1974), but it was not until four years of polemics later, after three additional courts had their say, that this court's initial order was affirmed and the county was dismissed. *Miree v. United States*, 588 F.2d 453 (5th Cir. 1979).

Since the drawn-out resolution of that issue in the county's favor, things have taken an expected turn. Henry F. Manget, Jr. [Manget], the manager of the DeKalb-Peachtree Airport at the time of the accident, and a defendant or third-party defendant in four companion cases, has moved for summary judgment on the ground that as a DeKalb County official he too is immune from suit. The United States, in the meantime, moved for leave to file third and fourth-party complaints against the county for contractual and/or tortious indemnity and contribution. After a hearing held on August 15, 1979, to consider the issues raised by the government's motion, the court granted the motion, while reserving judgment on a motion to dismiss these claims filed by DeKalb County. The county's motion has since been modified to request, in the alternative, summary judgment. Also left pending was a motion filed by the United States requesting that all these cases be consolidated for trial. These motions have been submitted, and in some cases resubmitted, to the court and are now ripe for decision.

*Manget's Motion for Summary Judgment*

Manget has been named a defendant or a third-party defendant in four companion suits in claims filed by William Michael Fields, Southeast Machinery, Inc., Fireman's Fund Insurance Co., and Semac Industries, Inc. [the plaintiffs]. The theory of liability asserted in each is virtually identical: Manget, as the manager of the airport, was under a duty to maintain and supervise its ground operations; as part of his official duties, he was responsible for ensuring for the safety of airport patrons that the approaches to and clear zones of the airport were unobstructed; he breached this duty when he failed to remedy the hazard created by the flocks of birds congregating at an open garbage dump near a runway used frequently by jet aircraft; notwithstanding his appreciation of the substantial danger posed by air strikes and his knowledge of recent strikes in the proximate area, Manget neglected to warn visiting airmen of this hazard; and his negligent behavior, in the face of this continuing risk of tragic consequences, constitutes willful and wanton conduct in flagrant disregard of his ongoing duty to airport patrons.

Manget denies any negligence on his part, but his principal defense up to this point has been the derivative immunity from private suit extended public officials for the tortious consequences of acts done in an official capacity. Manget contends that he is immune from suit for any breach of his duties as manager of the county airport. Aside from his immunity defense, he further maintains that as an individual he owed no duty to airport patrons and, therefore, cannot be held personally liable.

Before addressing the merits of Manget's defenses, the court deems it wise to eliminate one potential source of confusion. The distinction drawn by Manget between his personal and official liability is misleading. Manget's only exposure to tort liability for this accident is through his alleged misfeasance or nonfeasance while serving as airport manager. Assuming that the plaintiffs' allegations are true, and are established by a preponderance of the evidence, Manget can be held personally liable for the damages arising out of a breach of his official duty, unless of course he is immune from suit. *See Florida State Hospital v. Durham Iron Co.*, 194 Ga. 350, 353, 21 S.E.2d 216 (1942).

■ His claim of immunity springs from two sources. He first contends that he is only the nominal defendant or third-party defendant in these suits, which are actually against the State of Georgia, because, if the plaintiffs are successful, any judgment would have to be satisfied from the state treasury. Manget insists that the suits filed against him are nothing but a thinly disguised ruse by the plaintiffs to circumvent the county's successful claim of immunity. Were this the case, then the claims against Manget should be dismissed with prejudice, since the question of the county's complete immunity from liability for this accident has already been resolved in the county's favor. It is a well-settled principle that, irrespective of whom the named defendant is, an action in which a judgment for the plaintiff would affect or control property or action of the state is against the state and thus cannot proceed without its consent. *E. g., Evans v. Just Open Government*, 242 Ga. 834, 251 S.E.2d 546 (1979); *Crowder v. Department of State Parks*, 228 Ga. 436, 185 S.E.2d 908 (1971), *cert. denied*, 406 U.S. 914, 92 S.Ct. 1768, 32 L.Ed.2d 113 (1972); *see* Ga.Code Ann. § 23–1502. But the plaintiffs do not take issue with this principle; they contend that their claims are predicated solely upon Manget's personal liability for the tortious consequences of his official conduct, which brings the court to the second facet of Manget's immunity defense.

Manget also contends that even though, as a general principle, the plaintiffs' claims may be brought against him personally, he is still immune from liability for simple negligence since the complained-of acts were committed in the exercise of his discretionary authority. Only if he is guilty of fraud, corruption, or willful and wanton behavior, Manget continues, can he be held personally liable for his discretionary acts as a public official. Upon this foundation, Manget concludes that he is immune because the plaintiffs have not accused him of any acts that might abrogate his qualified immunity or, alternatively, because even if he is accused of such flagrant conduct, the record shows conclusively that he is not guilty of any fraudulent, corrupt, or willful and wanton behavior. The plaintiffs, on the other hand, contest both Manget's characterization of his act as discretionary and his contentions that they have not alleged wanton conduct, or that this court can even decide as a matter of law on a motion for summary judgment that Manget is not guilty of willful and wanton misconduct. They assert first that the qualified immunity extended public officials is contingent upon their performance of discretionary acts. From this general proposition the plaintiffs argue that well before the accident occurred Manget received orders from the Federal Aviation Administration to remedy the hazard created by the birds and that, henceforth, whatever action he took to comply with this directive did not necessitate an exercise of discretion: he had no choice but to eliminate or at least mitigate the danger. They also point out that even assuming that this act demanded an exercise of discretion, Manget can still be held liable for willful and wanton misconduct and that their claims clearly allege this theory of liability.

■ The parties, then, do not disagree over what legal principles are controlling here but only as to their application to these circumstances. Though it may seem something of a non sequitur to hold a public official personally accountable for action taken in his official capacity when his employer enjoys complete protection by virtue of its sovereign immunity, Georgia courts have steadfastly refused to grant a public official the same blanket immunity extended the state. To avoid allowing public officials to escape all legal responsibility for their actions, but at the same time to prevent the specter of tort liability from inhibiting all governmental decisionmaking, the courts have drawn a rather finespun distinction between discretionary and ministerial acts. A clear line is difficult to draw because it is essentially a question of degree. A discretionary act is generally characterized as one which is the result of personal discretion or judgment. A ministerial act, on the other hand, requires merely the

execution of a specific duty arising from fixed or designated facts. A public official is protected from liability in the performance of his discretionary duties, whereas ministerial acts are committed at the official's own risk. *See Partain v. Maddox*, 131 Ga.App. 778, 206 S.E.2d 618 (1974). As a county official, then, Manget is entitled to qualified immunity to the extent that the complained-of acts were committed in the exercise of his discretionary authority and were not willful and wanton.

In support of his claim of immunity, Manget contends that the broad scope of his discretionary authority is evident upon only a cursory review of his job's requirements. Emphasizing the wide range of responsibilities vested in the airport manager, Manget points out that aside from his responsibility for ground safety, he was expected to direct the daily operations of the airport, which task entails inspecting facilities, maintaining security, coordinating air traffic control with the Federal Aviation Administration, leasing office space, and purchasing supplies for the continued operation of the airport. The manager is expected to institute and enforce the operational policies handed down by the Board of Commissioners. Moreover, the general job description calls for an ability to analyze airport problems and to develop and implement sound policies and regulations for their solution.

This brief summary of the job's principal requirements clearly shows that the airport manager is called upon to use his personal judgment in the supervision and performance of a number of airport functions. But, as the plaintiffs point out, in Georgia the distinction between a ministerial and a discretionary act, and therefore the scope of the immunity granted a public official in any given situation, turns upon the specific character of the complained-of act, not the more general nature of the job. *Partain v. Maddox, supra*, 131 Ga.App. at 783, 206 S.E.2d 618; *Price v. Owen*, 67 Ga.App. 58, 60, 19 S.E.2d 529 (1942). Under this standard it makes no difference that the official is required to perform discretionary acts if the complained-of act is more

properly characterized as ministerial. This grant of qualified immunity, then, is really more in the nature of a transitory privilege rooted in the fear that a contrary rule would inhibit the judgment upon which good government rests. The single overriding factor is whether the specific act from which liability allegedly arises is discretionary or ministerial.

Notwithstanding the facile simplicity of this narrow issue, affixing the proper label to any act can be problematic, for it is difficult to imagine any meaningful task, no matter how menial, that does not involve some measure of discretion. When a lower echelon employee is directed to perform a specific task, the manner in which it is accomplished is often left to the employee's discretion; yet more likely than not the execution of these instructions will be characterized as ministerial because the actor is under a standing order to perform a precise and certain job. When, as in the present case, the individual routinely performs both discretionary and ministerial acts under a broad, vague grant of authority, it is extremely difficult to draw a useful line between these two species of official acts.

Because the distinction is circumstance-oriented, prior cases offer little assistance other than to bring the distinction between the two into sharper relief. In *Price v. Owen, supra*, the warden of a prison camp was sued by an individual who was injured when a truck driven by inmates on a prison work detail collided with her car. Under a state statute the warden, through the Prison Commission, was responsible for the discipline at and daily operation of the camp. To allow inmates to work outside prison with only minimal supervision, the court observed, was an exercise of the Commission's and the warden's discretion. Therefore, the court concluded, the warden's only shortcoming was his failure to enact rules stringent enough to ensure control of the inmates outside the camp, a discretionary responsibility. A similar result was obtained in *Partain v. Maddox*, 131 Ga.App. 778, 206 S.E.2d 618 (1974), in which the court held that the chairman of the Board of

Pardons and Paroles was immune from suit when the complained-of act related to his passing on the instructions received from the Governor. *See also Harrell v. Graham*, 70 Ga.App. 178, 27 S.E.2d 892 (1943) (act of Board of Education of Dodge County in routing school buses was discretionary).

On the other hand, in *Mathis v. Nelson*, 79 Ga.App. 639, 54 S.E.2d 710 (1949), and *Webb v. Hennessy*, 150 Ga.App. 326, 257 S.E.2d 315 (1979), the courts held that the acts in question were ministerial. In *Mathis*, the plaintiff was injured in a collision with equipment used in connection with road construction. She brought suit alleging that the defendant, who was responsible for supervising this project, was negligent in failing to ensure that his methods were safe. In rejecting his claim of immunity, the court held that the acts of the supervisor in carrying out the physical details of the construction were ministerial and that, therefore, the defendant could be held personally liable. *Accord, City Council of Augusta v. Owens*, 111 Ga. 464, 36 S.E. 830 (1900). For similar reasons the court in *Webb* held that the maintenance of the school premises was a ministerial duty and, therefore, the principal of the school could be held liable for his alleged negligence in allowing a dangerous condition to persist at the school under his direct supervision and control.

■ From this admittedly brief exegesis of case law, a general understanding of the terms "discretionary" and "ministerial" can be extracted, which although not definitive can channel further inquiry into the circumstances of this case. A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. This dichotomy is maintained, for the most part, by stressing the nature of the act involved, the degree of responsibility entrusted to the official, and his position in his employer's hierarchy.

■ Here the determinative act is Manget's alleged failure to disperse or kill the birds and/or to warn incoming and departing airmen of the hazard. To decide this single issue of immunity in Manget's favor on the basis of the record is tempting since at the time of the accident Manget clearly exercised some discretionary authority as airport manager greater than or equal to that exercised by public officials found immune in prior cases. But on the narrow issue of whether the abatement or mitigation of the bird hazard was such a discretionary act, Manget offers very little that might persuade the court. Manget admits that before the accident occurred the birds constituted a danger to airmen. He further admits that as airport manager it was his explicit responsibility to ensure ground safety. Manget reveals that on approximately 172 separate occasions he went onto the runways armed with a shotgun to inspect the airport grounds and to shoot and scare away any birds; that he notified members of the DeKalb County Board of Commissioners of the danger and suggested several precautions that should be taken; that he met with representatives of the Federal Aviation Administration [FAA] and its tower employees to develop a system whereby the tower would notify him when bird concentrations reached alarming proportions; that at the airport's request an exterminating company made visits to the landfill in an attempt to make it less palatable to the birds; and that on at least two occasions he requested the FAA to issue official Notices to Airmen warning pilots of the risk created by the regular presence of large flocks of birds. That Manget was concerned about, and anxious to remedy, the problem is clear, but there is nothing in this list of official actions to suggest that as a matter of law Manget's acts were discretionary. Instead, it would appear that once the bird problem and the need to correct it were acknowledged by the official responsible for the maintenance and operation of the airport, the time for exercising personal

judgment had passed. Implicit in the conclusion that an act was discretionary is the notion that the official was free to perform or disregard the act. In assessing a situation and weighing alternative courses of action, an official is called upon to exercise his own judgment in prescribing the approach to be taken. If he should select one course of action over another, or simply decide to defer further action until he has had more of an opportunity to review the circumstances, the official may be faulted for any deliberative errors, but he may not be held personally liable for the consequences of his decision. When instead he acts under the compulsion of orders from his superiors or of his own evaluation of an exigent need for immediate action, his discretion, however broad it might be normally, has no reason or room to operate. Arguably, the selection of an appropriate method of solving the problem from a number of alternatives requires personal judgment and deliberation, but not necessarily so; and Manget offers nothing here to distinguish these circumstances from those present in earlier decisions in which a public official's freedom to choose the appropriate method to complete a designated duty was held to be insufficiently discretionary to shield the official from liability when the work under his supervision was performed negligently. The fact that Manget could choose his means does not transform a specific duty to eliminate an acknowledged hazard into a discretionary act.[1] Accordingly, the court hereby denies Manget's motion for summary judgment.

*DeKalb County's Motion to Dismiss or, in the Alternative, for Summary Judgment*

With the permission of the court, the United States has filed third and fourth-party claims against DeKalb County for indemnity or contribution, alleging that the sole cause of this accident at the DeKalb-Peachtree Airport was the county's failure to eliminate, or even mitigate, the danger created by the presence of large flocks of birds on or near the runways used regularly by jet aircraft. DeKalb County raises a number of objections to the United States' claims, but only one need concern the court at this time. The county contends that because the government executed service improperly, the court does not have personal jurisdiction over it. The return filed with the court indicates that in accordance with the government's instructions, the United States Marshal served the government's third and fourth-party complaints on co-counsel for the county. In support of its motion to dismiss, DeKalb County establishes by affidavit that its attorneys were never authorized to receive service of process in this suit. The county further complains that the government waited an unreasonably long time before even attempting service and that as a direct consequence of this delay, its efforts to prepare for trial have been stymied.

■ Rule 12(b)(5) of the Federal Rules of Civil Procedure authorizes the court to dismiss a civil action when service of process is inadequate or when the plaintiff does not attempt service within a reasonable time. *Canada v. Mathews,* 449 F.2d 253, 254 (5th Cir. 1971) (per curiam); *see* Local Court Rule 131.11. When the Federal Rules call for service upon a party as a precondition to the court's obtaining in personam jurisdiction, service upon counsel is ineffectual, unless the party has appointed his attorney his agent for service of process, or it is otherwise authorized by law. *Ransom v. Brennan,* 437 F.2d 513, 518–19 (5th Cir.), *cert. denied,* 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Souter v. Carnes,* 229 Ga. 220, 190 S.E.2d 69 (1972). *See generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1097, at 371–72 (1969). Here it is clear that the government had no

---

1. Manget is not being held to answer for the transgressions of DeKalb County. It is apparent that only the County Board of Commissioners was empowered to discontinue use of, or remove, the landfill. But Manget could be held liable for failing to take whatever precautions were possible at his level, even though his efforts were likely to be only stop-gap Whether in fact he did do all that he was required to under the circumstances is a question for the jury (or court as a factfinder) to determine under the appropriate standard of conduct.

basis for believing that DeKalb County had ever authorized its attorney to receive service. Furthermore, after receiving permission from the court to file its claims over the county's objections, the United States, for no apparent reason, allowed four months to pass before it even attempted to serve the county.

 But dismissal of a civil action for failure to comply with rule 4(d) is inappropriate unless otherwise a party's rights would be seriously prejudiced or no reasonably conceivable means of acquiring jurisdiction over the defendant remains. *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 554 (5th Cir. 1959); *see 2 Moore's Federal Practice* ¶ 4.44, at 4–555 (1979). Even though the plaintiff's attorney may have erred in directing service, the suit should not be dismissed unless the defendant has been seriously prejudiced by the mistake, or by the delay in correcting it. *Otazo v. Fayette County Board of Education*, No. C79–547A (N.D.Ga. October 30, 1979) (O'Kelley, J.). DeKalb County insists that its discovery time has been severely curtailed by the government's delay in serving its claims. Without intending to downplay the significance of the government's slipshod manner nor to dispute the sincerity of the county's objections, the court, however, concludes that a dismissal is not warranted under these circumstances. Since this motion was filed, the government has perfected service on the county, albeit belatedly, thereby correcting its earlier mistake. DeKalb County has been aware of the United States' claims since August, 1979, when the court held a hearing on the government's motion to file third and fourth-party complaints. Discovery in this case has been continuing without interruption for several years now, with the county's participation; if there is anything left to discover, the parties have had ample time to request it. Assuming, however, that some vital piece of information has escaped the county's grasp, the court is fully capable of protecting the county's right to prepare for trial, should that be necessary. The court does not lightly overlook the ripple effect of the government's mismanagement of its case,

but the attorney for the Department of Justice has assured the court that henceforth the government will endeavor to proceed in strict accordance with proper procedure. Accordingly, the court hereby denies Manget's motion for summary judgment and DeKalb County's motion to dismiss for improper service. Consideration of the county's other grounds for dismissal and the government's motion for consolidation will be deferred until a later date.

IT IS SO ORDERED.