18662, 18666.  WEST *et al. v.* HOUSING AUTHORITY OF CITY OF ATLANTA; and *vice versa.*

Argued July 13, 1954—Decided September 14, 1954—
Rehearing denied October 14, 1954.

*Newell Edenfield, Wm. G. McRae, Wm. F. Buchanan,* for plaintiffs in error.

*John Izard, Jr., W. K. Meadow, Spalding, Sibley, Troutman & Kelley,* contra.

ALMAND, Justice. ■ We first consider the plaintiffs' assignments of error as to the court's sustaining of the defendant's special demurrers to certain allegations of the petition.

(a) Paragraph 11 of the petition alleged that, under section 13 of the Housing Authorities Law (Ga. L. 1937, pp. 210, 223; Code, Ann. Supp., § 99-1120), all housing projects erected by an Authority must conform to local zoning laws; but that the defendant was proceeding to erect multiple residential units on the property in violation of the zoning ordinance of the City of Atlanta, since a large portion of the land to be used for the project was now zoned for one-family residential use. The grounds of the demurrer to this paragraph were, that the plaintiffs had no legal right to raise this question, and that the allegations of said paragraph were impertinent, irrelevant, prejudicial, and premature.

The primary object of the petition was to enjoin the defendant from condemning the property of the plaintiff. Though the defendant, under section 13 of the Housing Authorities Law, supra, is amenable to the zoning ordinances of the City of Atlanta, a compliance by the defendant Authority with such ordinances and regulations is not made a condition precedent to the condemning by the Authority of private property by exercise of the power of eminent domain. The fact that the property sought to be condemned has not been zoned by the municipality for the use contemplated by the Authority is not a valid ground or reason to enjoin the Authority from proceeding with the project. The case of *Tift* v. *Atlantic Coast Line R. Co.*, 161 *Ga.* 432 (131 S. E. 46), is controlling on this point, and sustains the ruling of the trial court. In that case, a property owner sought to restrain a railroad company from condemning an alley on which the plaintiff's property abutted, because before the railroad could extend its tracks in the public street it must procure the permission and consent of the city, and this permsision had not been obtained prior to the institution of the condemnation proceeding. It was there held: "3. As a general rule a railroad company must obtain the written consent of the municipal authorities before it can lay a track on a street of any city in this State; but the lack of such permission does not prevent a railroad company from exercising the right of eminent domain to con-

demn a municipal alley as a right of way for the extension of one of its tracks in such alley for public use. Such consent is not a condition precedent to the preparatory step of condemning a right of way on which to lay such track."

(b)  The court sustained the special demurrer to paragraph 20 of the petition, which alleged: "Petitioners show that the plan proposed by defendant for project GA-6-7 is unconstitutional and void and amounts to an unconstitutional perversion of the Housing Authority Law, in violation of the 14th Amendment to the Constitution of the United States, and of Article 1, Section 1, paragraph 3 of the Constitution of Georgia (Code § 2-103), providing that no person shall be deprived of due process of law or of equal protection of the laws, because said plan proposes and contemplates that the housing units to be constructed thereunder shall be occupied only by white persons, thus constituting an unconstitutional attempt at racial segregation and an unlawful discrimination against American citizens of other races."

This ruling was not erroneous. The Housing Authorities Law does not forbid the Authority from erecting or maintaining a housing project for occupancy solely by members of the white race, or any other race. The only classification made in the act as to the persons eligible to rent the housing units is "persons of low income." The petition does not disclose that the petitioners belong to any race that would be discriminated against if the project was confined to persons of the white race. It is a settled rule of law that one cannot raise the question of constitutionality of a statute, or of the action of an administrative agency acting under statutory power, as violative of constitutional rights, unless the interest or rights of such complaining party are affected by the statute or the action of the agency. *Cooper* v. *Rollins*, 152 *Ga.* 588 (110 S. E. 726, 20 A. L. R. 1105); *Stegall* v. *Southwest Georgia Regional Housing Authority*, 197 *Ga.* 571 (30 S. E. 2d 196); *Whittle* v. *Jones*, 198 *Ga.* 538 (4) (32 S. E. 2d 94); *Civil Service Board of Fulton County* v. *MacNeill*, 201 *Ga.* 643 (2) (40 S. E. 2d 655); *Franklin* v. *Harper*, 205 *Ga.* 779 (55 S. E. 2d 221). The plaintiffs alleged themselves to be the owners of the property sought to be condemned by the Authority for the use of persons of low income, and are not in position to raise the question as to whether the maintenance of the project would

constitute unlawful discrimination against citizens of other races in violation of the due-process clauses of the State and Federal Constitutions.

(c) The court struck paragraph 13 of the petition, which alleged that the defendant grossly abused its discretion because the estimated cost of constructing each housing unit would be more than twice the amount which would be required if the construction was by private enterprise. The ground of demurrer sustained was that the plaintiffs had no legal right to complain as to this expenditure. This ruling is sustained by our ruling in *Barber* v. *Housing Authority of the City of Rome*, 189 *Ga.* 155 (4) (5 S. E. 2d 425), where it was held: "The petitioners, suing merely as the owners of land sought to be condemned by the defendant, showed no right to attack in equity the legality of the receipt or expenditure of Federal funds, received by the defendant from the United States Housing Authority, under the Federal 'low-rent housing' act of September 1, 1937, as amended. U. S. Code Ann. Cum. Supp. title 42, §§ 1401-1421."

The 4th and 9th grounds of the amended motion for a new trial will be considered together. The 4th ground asserts that the court failed to charge without request that the failure of the defendant, before proceeding with the project, to submit to the State Housing Authority Board, as required by statute, the details of the project, would constitute an abuse of discretion, and that such failure to charge was error, in that a jury question on this issue was made by the pleadings and evidence. The 9th ground asserts that the court, in instructing the jury as to one issue, viz., that the determination of the defendant to proceed with the project upon the basis that there was a shortage of decent, safe, and sanitary dwelling accommodations for persons of low income, was or was not an abuse of discretion, was error, because it eliminated from consideration by the jury the issue as to whether the defendant was proceeding without the approval of the State Housing Authority Board.

The petition alleged that, although the minutes of the State Housing Authority Board show that the plans of the project were filed by the defendant with the board for consideration and approval, "On information and belief obtained from one of the members of said board," the representation that the plan was

submitted to or considered by the board was false, and the approval was obtained without any plan being presented to the board, and without any consideration of either its wisdom or necessity.

Under section 4 of the State Housing Authorities Law (Ga. L. 1937, pp. 210, 216), section 2 of the act of 1939 amending said section 4 of the act of 1937 (Ga. L. 1939, pp. 112, 115), and the act of 1949 creating the present State Housing Authority Board (Ga. L. 1949, p. 23), the defendant, upon adoption of the resolution for the building of the project involved in this case, was required to forward a copy of the resolution to the State Housing Authority Board, together with a complete analysis of the project to be undertaken, in such manner as may be provided by the board, and could not proceed with the project until the board approved the same. When the board has given its approval in writing, it has no power thereafter to veto or disapprove such project.

There were in evidence two resolutions adopted by the State Housing Authority Board, the first one being dated November 25, 1952, wherein all proceedings and acts theretofore taken by the defendant Authority were ratified, approved, and confirmed, and the defendant was authorized to do every act or thing necessary to carry out the development of the project. The second resolution, adopted on October 22, 1953, after reciting that the State Board by resolution had approved the defendant's project on November 25, 1952, and that the State Board had reconsidered the analysis of the various elements, and the considerations stated in the proposal of the defendant with regard to said project, recited that the resolution of November 25, 1952, "was adopted after full consideration of all the matters set out therein and was final in all respects." The only evidence on the trial as to what procedure the State Board took in approving the project appears in the testimony of Mr. Zach Cravey, a member of said board, who testified as a witness for the plaintiffs. At the time of the first approval of the project, he testified that he did not have any plan before him, and the board did not make any investigation as to the advisability or necessity of the project before signing the resolution approving the project. His testimony as to the adoption of the second resolution was as

follows: "We called a meeting of the board and discussed this particular project and, after discussing it, then we approved our previous action—if that gives you any information. It was our intention to approve this project on both occasions and to give this project our full approval. As to whether at this time we have been furnished with a full analysis of the project, yes, sir, we are familiar with it and our board has approved the project." This testimony of Mr. Cravey was undisputed. It thus appears that the charge made in the pleadings, that the plan and project were approved without a proper investigation, was not supported by any evidence, and it was not error for the court to fail to submit this alleged issue to the jury.

■ Grounds 5 and 7 of the amended motion will be considered together. Ground 5 complains that the whole charge given to the jury was confusing, misleading, and incomplete, because (a) the jury were required to decide whether the defendant has abused its discretion, without defining the phrase "abuse of discretion"; and (b) in submitting the sole question to the jury as to whether, in determining whether a shortage of decent, safe, and sanitary dwellings for persons of low income existed within the described area in the City of Atlanta, the defendant had or had not abused its discretion, the court in its recharge expressly prohibited the jury from determining whether such a shortage existed. Ground 7 charges that the court erred in its recharge. After the jury had retired, and while considering the case, they returned to the courtroom, and the foreman informed the court that the jury would like to know "whether we are restricted to determining one fact only, that is, was there a low-cost housing shortage when this petition was approved." The court replied: "You don't determine that fact, gentlemen; you determine only the fact stated in the form of verdict, that is, whether or not the Commissioners of the Housing Authority abused their discretion in determining to proceed with this project on the basis of a shortage of low-cost housing in Atlanta; the fundamental fact which you are to determine is whether or not the Commissioners of the Housing Authority abused their discretion"; it being contended that the charge had the effect of refusing to allow the jury to determine whether or not a shortage existed.

The charges complained of are not subject to this criticism.

In the absence of a request, the court was not required to define the phrase "abuse of discretion." In the recharge, the jury were instructed, as they had been in the main charge, that in determining whether the defendant had abused its discretion, they had the power to determine whether a shortage of decent, safe, and sanitary dwelling accommodations for persons of low income did or did not exist, and it was for a jury to decide whether in making their decision that such a shortage did exist, it abused or did not abuse its discretion.

■ Grounds 6 and 8, involving similar contentions, will be considered together.

Ground 6 complains that the court further erred in failing to submit to the jury the contention of the plaintiffs that, if no necessity for the project existed, the defendant had no discretion to act. Ground 8 asserts that the charge as given was contradictory and confusing, because the jury in one place were told that the plaintiffs' property could not be taken unless a need existed for the property itself in order to supply necessary public housing, but the court submitted to them only the question of abuse of discretion, thus withdrawing, contradicting, and countermanding the instructions given as to necessity.

As we will point out below, it is not necessary in this case to decide whether the issue as to necessity or non-necessity in the taking of private property for public use under the power of eminent domain is one to be determined solely by the public agency exercising the power, or is one subject to judicial review. Nor is it necessary, as counsel for the plaintiffs request, to determine whether a conflict exists in the decisions of this court on this subject. See *Savannah &c. Ry. Co.* v. *Postal Telegraph Co.*, 112 *Ga.* 941 (38 S. E. 353) ; *Savannah &c. Ry. Co.* v. *Postal Telegraph Co.*, 115 *Ga.* 554 (42 S. E. 1) ; *Gardner* v. *Ga. R. & Bkg. Co.*, 117 *Ga.* 522 (43 S. E. 863) ; *Atlantic & Birmingham R. Co.* v. *Penny*, 119 *Ga.* 479 (46 S. E. 665) ; *Piedmont Cotton Mills* v. *Ga. Ry. & Elec. Co.*, 131 *Ga.* 129 (62 S. E. 52) ; *Sheppard* v. *City of Edison*, 161 *Ga.* 907 (132 S. E. 218).

At the plaintiffs' request, the court charged the jury as follows: "With respect to the right of the defendant, the Housing Authority, to take the properties of the plaintiffs in this case, I charge you that private property may not be taken by eminent domain

unless such property is necessary for public use. I charge you further that slum clearance alone does not constitute a public use of property and that you may disregard slum clearance as a basis for taking the properties here involved unless you also find that a need exists for the property itself in order to supply necessary public housing"; and immediately after this charge instructed them as follows: "I charge you, gentlemen, that if you find that the Commissioners of the Atlanta Housing Authority, the defendants in this case, acted arbitrarily or capriciously in determining to proceed with this project, then you would find that they have abused their discretion. I charge you, gentlemen, that if you find the Commissioners of the Housing Authority of the City of Atlanta acted by perversity of will or acted to an end or purpose against reason or against the purposes of the law, then you would find that the defendant abused its discretion in this case."

It will thus be seen that the court did instruct the jury that the plaintiffs' property could not be taken unless it was necessary for public use, and that the defendant could not take their property by the exercise of the power of eminent domain unless they found that a need existed for the property in order to supply necessary public housing. The jury were instructed that, if the defendant acted to an end or purpose without reason or against the purpose of the law, they should find that the defendant abused its discretion. By this charge, the issue of necessity was given to the jury.

It is insisted by counsel for the plaintiffs that, by submitting to the jury the sole question as to whether the defendant had or had not abused its discretion in making a determination that a shortage of dwelling accommodations existed, the court thereby eliminated the question of whether a necessity did exist, and should have submitted the question of necessity as a specific issue. The only specific prayer of the amended petition, other than for an injunction restraining the defendant from proceeding with this project, was: "That the court . . . enter a declaratory judgment as to whether the defendant may legally proceed with its project No. GA-6-7, and specifically that the court adjudicate and declare that said project and the plans of defendant

in connection therewith exceed the statutory powers of defendant and constitute an abuse of the discretion vested in defendant by the Housing Authorities Law." In paragraph 8 of the amended petition, it was alleged that "no necessity" existed for "such housing," and "that the finding of necessity therefor made by defendant was arbitrary and capricious, and is a sham and a fraud." The court, as it had a right to do under Code § 37-1104, submitted to the jury for answer a single question. The question embraced the determinative issue as made by the pleadings and the evidence. If the plaintiffs desired the submission of other questions or issues, they should have made their request at the trial, and cannot now be heard to complain for the first time in a motion for new trial that other or different questions should have been presented to the jury. *Hardin* v. *Foster*, 102 *Ga.* 180 (1) (29 S. E. 174); *Bailey* v. *Williams*, 155 *Ga.* 806 (1) (118 S. E. 354); *Shellman Banking Co.* v. *Oliver*, 182 *Ga.* 63 (3) (184 S. E. 707); *City of Atlanta* v. *Carroll*, 194 *Ga.* 172 (2) (21 S. E. 2d 86).

■ We have carefully reviewed the evidence, consisting of more than 130 pages of oral testimony and documentary evidence and more than 100 exhibits. Though the evidence conflicts on the material issues, it fully supports the verdict. It was not error to deny the amended motion for new trial.

The cross-bill of exceptions assigns error on certain rulings of the court upon special demurrers to the petition, but in view of our ruling on the main bill of exceptions, it becomes unnecessary to pass upon the questions in the cross-bill.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except Wyatt, P. J., who dissents.*