### A93A2112. HABERSHAM DOWNS HOMEOWNERS' ASSOCIATION, INC. v. DEPARTMENT OF TRANSPORTATION.
(442 SE2d 868)

SMITH, Judge.

In this condemnation case involving the widening of State Route 92 in north Fulton County, Habersham Downs Homeowners' Association filed a petition to set aside, annul, vacate, and dismiss the De-

partment of Transportation's declaration of taking. See OCGA § 32-3-11 (c). The trial court denied the petition, and this appeal followed.

The record reveals that Habersham Downs is a subdivision consisting of 52 lots in the Roswell area of north Fulton County. Part of the common area owned by the association, an amenities area including a swimming pool and tennis courts, abuts Highway 92. The property subject to the taking is part of the land between the amenities package and the road. Before the taking, Highway 92 was a two-lane road, and the amenities area was bordered by a stand of pine trees approximately 15-30 feet from the pool. A berm and about 20-25 feet of open ground separated the trees from the road bed. The DOT condemned .350 acres of this land. The taking will permit construction of a six-lane highway. The elevation of the road over the amenities will be higher, the slope between the road and the subdivision will be steeper, and a smaller barrier will exist between the road and the amenities.

The DOT estimated just and adequate compensation for the taking, including the land condemned and a temporary construction easement, at $100,600, and deposited that amount into the registry of the court.

In a proceeding regarding non-value issues, "OCGA § 32-3-11 [(b)] gives a trial court authority to set aside, vacate and annul a declaration of taking in the following situations — fraud or bad faith, the improper use of the condemnation powers, the abuse or misuse of the condemnation powers, and 'such other questions as may properly be raised.'" *Dept. of Transp. v. B & G Realty*, 197 Ga. App. 613, 614 (1) (398 SE2d 762) (1990). In reviewing the trial court's judgment in such a proceeding, this court will not reverse the lower court's findings on these issues if there is any evidence to support them. Id. at 615.

1. The association contends the trial court erred in denying its petition because the proposed road is unsafe, and the taking therefore was an improper use of the DOT's condemnation powers. The association's main safety concern is that because of the increased elevation of the road and the shorter distance between the road and the pool, vehicles leaving the highway may crash into the pool area. It also cites problems with regard to environmental damage, drainage, noise, and vibration.

However, as pointed out by the trial court, the association has proved none of its allegations regarding safety. It hired no road design consultants, safety experts or engineers, and called none as witnesses. The only "expert" called by the association was James Bradford, a real estate appraiser, consultant, and broker with experience at DOT as a staff appraiser. Bradford testified that he lacked the qualifications to assess the road's safety himself. He was told by DOT employees that their design department considered the road safe, and he

"believe[d] it meets minimum standards."

We do not agree with the association that the facts in this case are "indistinguishable" from those in *Cox Communications v. Dept. of Transp.*, 256 Ga. 455 (349 SE2d 450) (1986). In *Cox*, DOT condemned several acres of land to be used in the construction of a highway located adjacent to Cox's broadcasting tower and running beneath supporting guy wires. Cox filed a petition to set aside the declaration of taking, alleging that DOT was guilty of bad faith because it had failed to adopt a specific plan to protect the public from the danger of ice falling from the upper portions of the tower and injuring highway users. The Supreme Court found that because it believed the facts in that case were unique, and the "risk to the public . . . transcend[ed] the hazards that ordinarily attach to public works," Cox's concerns were "neither fanciful nor speculative." Id. at 456 (2). Therefore, although the DOT's failure to adopt specific plans did not constitute bad faith under the standard developed in *City of Atlanta v. Heirs of Champion*, 244 Ga. 620 (261 SE2d 343) (1979), *Cox*, supra at 456 (1), it did constitute an " 'improper use' " of DOT's powers within the meaning of OCGA § 32-3-11 (b) (2). Id. at 456-457 (3).

The holding in *Cox* was explicitly premised upon its unique facts, and absent those distinctive and rare facts, the analogy to *Cox* fails. The facts here are not unique. Moreover, while the danger in *Cox* was a proven one, the concerns here consist of unproven speculation. The trial court did not err in finding the association had not proved that DOT improperly used its powers because the proposed road is unsafe.

2. The association maintains the trial court erred in denying its petition because DOT abused its powers. In this enumeration, the allegation is that DOT has essentially required the association either to purchase safety from DOT or to pay for it itself. The allegation is based upon a letter dated February 22, 1991, from James L. (Smoky) Butler III, DOT's Acquisition Manager, to Bradford. In the letter, Butler explained that the original compensation proposed by DOT included $60,900 in consequential damages, based on the increased proximity of the right-of-way to the amenities package. If the association desired a wall, DOT offered to work with it in designing one, but the construction of such a wall would "negate" the $60,900 "proximity" damages.

Consequential damages to the remainder of the property are awarded to compensate the condemnee for the diminution in value of the remainder of the property as a result of the taking. *Benton v. Chatham County*, 206 Ga. App. 285, 288-289 (4) (b) (425 SE2d 317) (1992). As pointed out at the hearing, it is intuitively obvious that the larger and more aesthetic the barrier erected between the amenities package and the road, the smaller the consequential damages. It fol-

lows that DOT would not be required both to provide compensation for a diminution in the value of the amenities package, and to construct a barrier so as to eliminate such diminution in value. This enumeration is without merit.

3. We find no merit in the association's contention that the trial court erred when it denied the petition yet ordered DOT to produce its environmental impact statement and other relevant information to the association.[1] Because OCGA § 32-3-11 (b) restricts the relevant issues, the declaration of taking would not be set aside for DOT's failure to provide an environmental impact statement unless it was a misuse or abuse of DOT's powers. The association cites *Dept. of Transp. v. Hudson,* 179 Ga. App. 842 (348 SE2d 106) (1986), in support of its argument that failure to provide the environmental impact statement was such an abuse. *Hudson,* though, is clearly distinguishable. In that case, a DOT design engineer admitted that DOT had failed to *perform* safety studies, an environmental impact statement, or a detailed cost analysis. This court held DOT's complete failure to perform was a misuse of its powers. No such evidence was presented here. It is undisputed that the environmental statement had been performed, and apparently had been distributed at public hearings on the road widening. The trial court did not err.

4. The association contends that DOT's omission of the commencement date of the temporary construction easement it sought to condemn rendered the declaration of taking invalid under the rule established in *Dorsey v. Dept. of Transp.,* 248 Ga. 34 (279 SE2d 707) (1981). This contention is patently without merit.

In *Dorsey* the Supreme Court held that the "possibility of a condemnor reaping a benefit from having filed a faulty declaration of taking should be avoided." Id. at 37. Therefore, where a declaration of taking does not comport with the requirements of OCGA § 32-3-6, the condemnee who has successfully invoked OCGA § 32-3-11 may elect whether the effective date for determining the amount of just and adequate compensation — the date of the taking — is the date of filing the original declaration or the amended declaration. Id.

*Dorsey* has no application here because in this case the declaration of taking was not faulty. OCGA § 32-3-7 (a) provides that title to the property in issue vests in the condemnor on the date the declaration of taking is filed and the compensation is deposited with the court. As a matter of law, the commencement date for the temporary construction easement is the date of the taking.

5. We find no merit in the association's final enumeration of error

---

[1] We have been unable to discern from the record any "other relevant information" ordered released to the association.

complaining that the trial court's examination of two of the association's witnesses, James Van Epps and Bradford, went beyond an inquiry into relevant facts and constituted advocacy in support of DOT. The court did question the witnesses extensively, and at times may have seemed irritated. It is apparent from the record that the court was concerned because the association's numerous allegations were not being proved. The court was never discourteous and did not discount the association's concerns. Given that this was a nonjury hearing, we find no harm in the court's questioning of these witnesses.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED MARCH 17, 1994 —
RECONSIDERATION DENIED MARCH 31, 1994 — 

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert, David P. Thatcher,* for appellant.

*Michael J. Bowers, Attorney General, Howell & Whiting, James S. S. Howell,* for appellee.