S95A1533. THREATT et al. v. FULTON COUNTY et al.
(467 SE2d 546)

HINES, Justice.

This appeal stems from three complaints in rem brought by Fulton County for the condemnation[1] of certain sewer easements

---

[9] See *Lewis v. State,* 262 Ga. 679, 681 (424 SE2d 626) (1993).
[1] The actions were brought under OCGA § 22-2-100 et seq.

across three tracts of land adjoining the Chattahoochee River.[2] The easements were sought for the placement of a gravity outflow sewer line parallel to the riverbank.[3] The actions were consolidated and heard before a special master.[4] During the proceedings, the condemnees asserted state and federal constitutional challenges to the Metropolitan River Protection Act (MRPA), OCGA § 12-5-440 et seq.,[5] and to certain restrictions imposed on their property by the Atlanta Regional Commission (ARC).

The ARC is the metropolitan area planning and development commission for the Atlanta area. OCGA § 50-8-80. It also is the regional development center for the Atlanta region. OCGA §§ 50-8-42; 50-8-83. As such, it prepared a comprehensive land and water use plan for the stream corridor called the Chattahoochee Corridor Plan (Plan), formerly known as the Chattahoochee Corridor Study. OCGA

---

[2] The property is located on the south side of Riverside Road, between Riverside Road and the Chattahoochee River. In the aggregate, it consists of approximately 12.24 acres, with 3.43 acres being the property of Thomas A. Threatt, Shakerag Sand Company, and Ace Sand Company, 4.54 acres being the property of J. W. Threatt, Jr. a/k/a James W. Threatt, Jr., and 4.27 acres being the property of Ethel Gordon Power Almand, individually and in her capacity as co-executor under the will of Joe Martin Almand, deceased, and NationsBank Trust Company (Georgia), N.A., f/k/a Citizens & Southern Trust Company f/k/a Citizens & Southern National Bank as co-executor under the will of Joe Martin Almand.

The topography generally falls off from Riverside Road to the river's edge. The river embankment is about eight or ten feet in height as measured from the top of the bank to the "normal" level of the river. However, the water level is subject to fluctuation from time to time according to rainfall, releases from Buford Dam, and the season. The property is generally undeveloped except for a house with a swimming pool, driveway, and outbuildings belonging to Thomas A. Threatt and a small rental cottage on the Almand tract. The Almand property is a wooded tract of land with heavy growth of mature trees. The Thomas A. Threatt property is former pasture land largely cleared and grassed with mature trees towards Riverside Drive and generally along property lines and hedgerows. The James W. Threatt tract is less densely wooded but has mature vegetation and is used for the storage of landscape materials used in the Shakerag and Ace Sand Company's business.

[3] The centerline of the easement is approximately seventy feet from the river's low water mark, with a permanent easement extending ten feet on each side of the centerline and the temporary construction easement 20 feet from the centerline and the 50-foot buffer area from the river's edge. There is a 40-foot temporary construction easement for the purpose of placing the sewer pipe along the river.

[4] There were more than 25 hearings before the special master, occurring between March 18, 1992, and March 24, 1993.

[5] The Metropolitan River Protection Act (Ga. L. 1973, p. 128, § 1; Code 1981, § 12-5-440, enacted by Ga. L. 1982, p. 2107, § 4) has an express purpose to

provide a method whereby political subdivisions in certain metropolitan areas shall utilize the police power of the state, in accordance with a comprehensive plan, to protect consistently the water quality of any major stream, the public water supplies of such political subdivision and of the area, recreational values of the major stream, and private property rights of landowners; to prevent activities which contribute to floods and flood damage; to control erosion, siltation, and intensity of development; to provide for the location and design of land uses in such a way as to minimize the adverse impact of development on the major stream and flood plains; and to provide for comprehensive planning for the stream corridor in such areas.

OCGA § 12-5-442 (b).

§§ 12-5-441 (4); 12-5-443 (1). When a proposed sewer line is planned for location within the Chattahoochee River Corridor, ARC reviews the project to determine whether it will be consistent with the MRPA and the Plan. When property is located within the area prescribed by the MRPA, any building or land disturbance has to be accomplished through a permitting process pursuant to the Plan, which contains guidelines for the application for certificates.

The Plan's regulations require that vegetation be left undisturbed for a distance of 50 feet from the banks of the Chattahoochee River, and that, with certain exceptions, the political subdivision grant no permits for construction of impervious surfaces within 150 feet of the river's banks. The ARC will not recommend and the local government or political subdivision will not issue a certificate for the construction of a structure in the 50-foot buffer zone. The Plan also contains certain vulnerability standards based on physical characteristics of the area. The ARC formulated the maps and applies the standards used in recommending approval or non-approval of any development plan which disturbs the land in the areas where vulnerability categories apply. The ARC recommendation is acted upon by the local governmental entity and the application emanates from the local governmental authority. OCGA § 12-5-445.

The ARC intervened in the proceedings before the special master. The special master rendered an award which compensated condemnees for the permanent easements and temporary construction easements and for consequential damages; the award also overruled condemnees' constitutional challenges.

The condemnees filed appeals to the superior court as to value, moved to dismiss the condemnations on constitutional grounds, and brought exception to the non-value issues. The court found that there were a number of factors required in determining the placement of the sewer line; that the independent contractor employed by Fulton County looked at four different alignments to try to minimize the impact of the project on the property owners; that the sewer easements are a public necessity; that Fulton County had not acted in bad faith; that condemnees had failed to prove that they had been deprived of all economically beneficial use of their property; and that the county properly had exercised its discretion to determine the path of the easements. It denied the motion to dismiss the petitions for condemnation, overruled and denied each exception to the special master's award, and ordered the cases to proceed to trial on the sole issue of just and adequate compensation. Thereafter, the court entered its order and judgment condemning the property upon Fulton County's payment into court of the sums awarded by the special master. Subsequently, the parties entered into a "consent verdict" which resolved the issue of compensation, and the superior court entered a "Final

Judgment Upon Consent Verdict." The judgment provided that the condemnees might withdraw the funds from the court registry without prejudice to their right to appeal the non-value issues, and allowed the county to begin construction of the sewer line.[6]

The condemnees appeal, challenging the constitutionality of the ARC and its rules and regulations, the statutory and procedural authority for the condemnations, and the extent of the taking.

### The ARC Challenges

1. The condemnees contend that the condemnation is proceeding illegally because it has allowed the ARC to authorize binding rules and regulations beyond the power of eminent domain, resulting in the uncompensated taking of condemnees' property. They urge this is so because the ARC's rules and regulations were promulgated without constitutionally sufficient notice to landowners and others directly affected by the exercise of its rule-making power, the ARC's composition violates the Guaranty Clause, and to the extent that the ARC's action represents a delegation of the police power or power of eminent domain, it is an improper transfer of power by subterfuge or implication.

(a) The contention that the notice provisions contained in OCGA § 12-5-443 (1) offend due process under the Federal Constitution as interpreted in *Mullane v. Central Hanover Bank &c. Co.*, 339 U. S. 306 (70 SC 652, 94 LE 865) (1950) fails. Assuming that *Mullane* applies in this situation, what is required is that the notice be

> reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action [or proceeding] and afford them an opportunity to present their objections. [Cits.] The notice must be of such nature as reasonably to convey the required information, [cit.], and it must afford a reasonable time for those interested to make their appearance, [cits.]. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

Id. at 314-315. In cases of land use restriction, notice by publication in a newspaper of general circulation has passed constitutional muster. See *Willingham v. White*, 229 Ga. 75 (189 SE2d 442) (1972). And

---

[6] The judgment further provided that if the condemnees succeed in securing a reversal of the court's ruling on the non-value issues, the condemnees would have the right to a new trial on the issue of value within the parameters of this Court's decision and remittitur on the non-value issues and without any contention by the condemnees of damages caused by the county for trespass by virtue of the installation and maintenance of the sewer line.

so it does in this case. Considerations of practicality do not require that the ARC give personal notice to every landowner possibly affected by its regulations.

(b) The contention that the non-elected component of the ARC renders it violative of the Guaranty Clause of the United States Constitution is unavailing. Even assuming that the Guaranty Clause extends to this situation, *Bi-Metallic Invest. Co. v. State Bd. of Equalization*, 239 U. S. 441 (36 SC 141, 60 LE 372) (1915) relied on by condemnees, acknowledges that "[w]here a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption." Id. at 445.

(c) The contention that the ARC's action represents an improper delegation of the police power or power of eminent domain likewise fails. The commission's actions are merely recommendatory. It has no enforcement powers. *Pope v. City of Atlanta*, 242 Ga. 331, 332 (249 SE2d 16) (1978).

2. The condemnees contend that the ARC's rules and regulations relating to eminent domain violate due process and equal protection under the State and Federal Constitutions because the unauthorized 50-foot buffer area, by itself and in conjunction with other ARC regulations, is so restrictive that it is a de facto taking of condemnees' property under *Lucas v. South Carolina Coastal Council*, 505 U. S. 1003 (112 SC 2886, 120 LE2d 798) (1992) and *Dolan v. City of Tigard*, 512 U. S. ____ (114 SC 2309, 129 LE2d 304 ) (1994). However, there has been no showing that the buffer area or any other applicable regulation has deprived the condemnees of any or all economically viable or beneficial use of their property. Nor is this a situation in which it can be argued that fairness and justice dictate that the burden imposed by the regulation be borne by the public as a whole. See and compare *Parking Assn. of Ga. v. City of Atlanta*, 264 Ga. 764 (450 SE2d 200) (1994).

3. The condemnees' further contention that the restriction on impervious surfaces results in the unconstitutional taking of their property because the restriction is vague and indefinite fails. Implementation of such a standard as is at issue has been upheld. *Pope*, supra. Nor have condemnees made their case for selective enforcement because the improvements planned by the county may be considered impervious surfaces. The Plan provides express exemption for the types of sewage disposal structures as planned by the county in keeping with the purposes of the MRPA. See OCGA § 12-5-442 (b).

## Authority for the Condemnation

4. Condemnees contend that the county's complaints in rem were improperly brought under OCGA Title 22, Chapter 2, Article 2, and

therefore must be dismissed for lack of statutory authority because OCGA § 22-2-109 "refers only to factors to be considered in cases involving the location and the construction of highways" and nothing else in Chapter 2, Article 2, gives direction on determining just and adequate compensation in cases of condemnation for sewer lines.

Actions to condemn sewer easements are properly brought under Title 22, Chapter 2, Article 2. See *Miles v. Brown*, 223 Ga. 557 (156 SE2d 898) (1967); *Fulton County v. Threatt*, 210 Ga. App. 266 (435 SE2d 672) (1993); *Wrege v. Cobb County*, 203 Ga. App. 241 (416 SE2d 562) (1992). This proceeding before a special master is to be supplementary to and cumulative of the methods of condemnation described in Articles 1 and 3. OCGA § 22-2-109. It allows that the special master's powers and duties will include those given to assessors, and provides an adequate method for determining the just and adequate compensation of property sought to be condemned under the Article. *Kellett v. Fulton County*, 215 Ga. 551, 554 (1) (111 SE2d 364) (1959); OCGA § 22-2-108 and §§ 22-2-61 through 22-2-63.

5. The contention that the condemnation proceedings were inappropriate and untimely because they proceeded without prior approval by the City of Roswell or the ARC is without merit. Condemnees provide no authority for the proposition that the city's approval was a prerequisite. Moreover, the ARC's approval was obtained during the pendency of the special master proceeding.

*Extent of Taking*

6. Condemnees' claim that the taking is excessive and fails to minimize all possible harm fails. There is no requirement that all possible harm be minimized. Moreover, the evidence supports the nature and extent of the taking and the finding that the county did not act in bad faith. See *Craven v. Ga. Power Co.*, 248 Ga. 79 (281 SE2d 568) (1981); *City of Atlanta v. Heirs of Champion*, 244 Ga. 620 (261 SE2d 343) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 11, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996.

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert,* for appellants.

*Weiner, Yancey, Dempsey & Diggs, Beryl H. Weiner, Thomas C. Dempsey, Smith, Bassett, Purcell & Koenig, Harvey M. Koenig,* for

appellees.