A98A0480. FOWLER et al. v. CITY OF MARIETTA.
(504 SE2d 726)

BLACKBURN, Judge.

On June 24, 1994, the City of Marietta petitioned to condemn certain parcels of land within its historic district for a road-widening project. The condemnation affected residential property owned by appellants Eileen Davis Fowler n/k/a Mrs. Albert Weir (Weir) and Julian and Nancy Edwards. The special master recommended that the condemnation cases be dismissed because the city had exercised its condemnation powers in bad faith, arbitrarily, capriciously, and beyond powers conferred by law. The city excepted to the special master's recommendation, and the superior court granted the city's motion for summary judgment.

Generally, in reviewing non-value issues following a report by a

special master, the superior court conducts a de novo review of the evidence and acts as the finder of fact. See *Walker v. Ga. Power Co.*, 177 Ga. App. 493, 496-497 (1) (339 SE2d 728) (1986). However, the record does not reflect that the superior court in this case acted in its capacity as factfinder. Rather, the court granted summary judgment to the city, holding that there were no genuine issues of material fact. As discussed below, however, the superior court considered certain facts to be immaterial based on its misapprehension of the relevant law. Under these circumstances, we must apply a summary judgment standard of review to the superior court's ruling. "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. With respect to appellants Julian and Nancy Edwards, the evidence viewed in the light most favorable to the Edwardses showed the following. In July 1993 the city, which owned a piece of property at 57 Whitlock Avenue, solicited bids for the property. The Edwardses submitted a bid, which was accepted on September 8, 1993. On October 12, 1993, before the completion of the sale, counsel for the city asked whether the Edwardses would be willing to sell a portion of the property to the city for use as a right of way. The Edwardses declined. Concerned about possible condemnation by the city, the Edwardses inquired of Tom Boland, the city's facilitator of the sale, regarding the city's intentions on condemnation. Boland assured the Edwardses that, if they refused the city's request to sell a portion of the property, the city would not take any action to condemn the property for a right-of-way. On November 12, 1993, the Edwardses closed the purchase of the property for $217,500. After completion of the sale, the Edwardses spent approximately $400,000 on renovations and improvements to the property, operating it as a bed-and-breakfast known as the Whitlock Inn.

The Edwardses were dealing with Boland, the agent designated by the city to negotiate the sale of the property. Under these circumstances, the city cannot escape responsibility for the representations of the agent appointed by it to deal with the Edwardses. City councilman Dan Cox's comments to the Edwardses indicates some knowledge of Boland's representation. On February 8, 1994, councilman Cox came to the Edwardses' residence and spoke to Mrs. Edwards. He said that "I'm not supposed to let you know about this, but I thought you should know" that the city was going to be doing something about the right-of-way. The next night, the city voted to con-

demn a right-of-way along the frontage of the property.

"[A] condemning authority may not act in bad faith in the exercise of the right of eminent domain. . . . [B]ad faith is neither negligence nor poor judgment, but involves conscious wrongdoing and a dishonest intent." *Earth Mgmt. v. Heard County*, 248 Ga. 442, 446-447 (4) (283 SE2d 455) (1981). "The term 'bad faith' has been used side by side with the word 'fraud' in describing those exercises of official discretion to condemn lands with which the courts will interfere." *City of Atlanta v. First Nat. Bank of Atlanta*, 246 Ga. 424, 425 (271 SE2d 821) (1980). "In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, as to the necessity, and what and how much land shall be taken." (Punctuation omitted.) Id. at 424, n. 2.

The trial court in its order dismissed the misrepresentation by the city's agent, Tom Boland, that the city would take no action to condemn the right-of-way if the Edwardses refused to voluntarily sell a portion of the property. The trial court relied upon the proposition that "[p]owers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." OCGA § 45-6-5. However, this Code section is not applicable in this case, where the agent was specifically appointed by the city to negotiate the subject transaction and to deal with the Edwardses. Cities, like any other citizen, are bound to act in good faith. Given the reasonable inferences of prior knowledge of the misrepresentations by the city, this raises a jury question as to bad faith, therefore barring summary judgment.

The issue in this case is not estoppel, but bad faith. Although Boland's statement may not work an estoppel, it clearly constitutes evidence from which bad faith on the part of the city may be inferred. See *Earth Mgmt.*, supra at 447 (statements by county commissioners and the county attorney considered as evidence supporting finding of bad faith). The fact that the city asked if the Edwardses, upon purchasing the property, would be willing to sell a portion of it for a right-of-way indicates that the city had already considered the necessity of condemnation. By falsely assuring the Edwardses that the property would not be condemned against their opposition, the city induced the Edwardses to proceed with the consummation of the purchase and to invest substantial sums of money in renovating the property. The subsequent visit of a city councilman, Dan Cox, who told Mrs. Edwards that he was not supposed to tell them about the condemnation, is further indicative of bad faith by the city in the condemnation process.

The totality of the evidence suggests that the city intentionally misled the Edwardses as to its desire to condemn the right-of-way, in

an attempt to induce the Edwardses to consummate their purchase of the entire lot. In granting summary judgment to the city, the trial court erred in failing to give proper consideration to the above evidence, instead mistakenly focusing on the city's estoppel argument. Accordingly, the grant of summary judgment with respect to the Edwardses' property must be reversed and this case remanded to the trial court for proper consideration of this issue in its capacity as factfinder.

The dissent attempts to immunize the city from the effects of its bad faith by arguing that such bad faith occurred in the context of the sale of the property to the Edwardses, and not in the context of the condemnation process. However, the dissent fails to recognize that the city's actions are part of a continuous transaction. It is clear that the city was contemplating the possibility of the condemnation of the property at the time it was negotiating the sale with the Edwardses through its agent who at best misrepresented the city's position to them. The evidence would even support the conclusion that the city intentionally misled the Edwardses as to its desire to condemn for the purpose of inducing the Edwardses to purchase the property at a premium price and only after such purchase was consummated did the city reveal its plans for condemnation. In the meantime, the Edwardses had spent approximately $400,000 in renovation costs. The Edwardses reasonably relied on the representations of the city's agent and were harmed thereby. Under these circumstances, the entire condemnation process was infected by the city's bad faith, and the dissent's attempt to artificially bifurcate the city's conduct is without merit.

2. Appellant Weir has pointed to no evidence raising a factual question as to the city's bad faith in condemning her property. Weir contends that the city did not sufficiently investigate the necessity for condemning the property prior to the vote to condemn. However, the record reflects that the city did conduct investigations regarding traffic flow on Whitlock Avenue before the vote on condemnation and further studied the specific intersection at issue before the filing of the condemnation petition. Moreover, in the absence of bad faith, the condemnor has discretion to determine the necessity for condemnation and what land is to be condemned. *City of Atlanta v. Heirs of Champion*, 244 Ga. 620, 621 (261 SE2d 343) (1979). "While a court may disagree with the methods the condemning authority may choose to accomplish its objectives, it is not authorized to substitute its judgment for that of the authority." Id. at 621-622.

Weir also contends that the city showed bad faith by failing to comply with OCGA § 44-10-27 (a), which prohibits changes to a historic property unless the owner obtains a certificate of appropriateness from the historic preservation commission. However, this sec-

tion provides that local governments are exempt from this requirement, although they must notify the commission within 45 days of any action which would otherwise require a certificate. OCGA § 44-10-27 (b). Although the city failed to notify the commission within the 45-day period, its delay in satisfying this procedural requirement does not demonstrate bad faith with respect to the condemnation.

Weir also claims that the city showed bad faith by failing to comply with a local ordinance requiring a certificate of appropriateness before altering a historic property. However, compliance with such a local ordinance is not a prerequisite to condemnation. See *West v. Housing Auth. &c. of Atlanta*, 211 Ga. 133 (84 SE2d 30) (1954); *Macon-Bibb County Planning &c. v. Bibb County School Dist.*, 222 Ga. App. 264 (474 SE2d 70) (1996). The city's failure to obtain such certificate prior to condemnation does not demonstrate bad faith with respect to the condemnation.

Finally, Weir contends that the city's bad faith is demonstrated by the fact that, three years earlier, Weir had conveyed a right-of-way to the city for use as a turn lane. However, Weir points to no evidence that the city's subsequent decision to condemn additional property in connection with the road-widening project was the product of bad faith.

As Weir has failed to show evidence of the city's bad faith, the superior court correctly granted the city's motion for summary judgment with respect to Weir's property.

*Judgment affirmed in part and reversed in part. Johnson, P. J., Smith, J., and Senior Appellate Judge Harold R. Banke concur. Andrews, C. J., McMurray, P. J., and Eldridge, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent because I find the evidence in the case sub judice supportive of the superior court's subjective determination that the City did not act in "bad faith" in condemning the subject properties.

After the City filed exceptions to the special master's recommendation, the superior court found that the City did not act in bad faith, arbitrarily, capriciously and beyond its powers in condemning the subject property. The superior court supported this ruling after determining that the City is not estopped to exercise its condemnation powers based on Stephen T. Boland's unauthorized representations to the Edwardses regarding the City's future condemnation plans. The superior court also pointed out that the City complied with Marietta City Code § 7-5005 (a) (5), as well as Georgia's Historic Preservation Act, after the special master's finding that the City had acted in bad faith in exercising its condemnation powers; that (even though

the City was not required to provide the Edwardses with notice of its February 9, 1994 agenda to consider condemning the subject realty) a member of the City's city council informed the Edwardses about this agenda item on February 8, 1994, and that (while the City did not study or consider alternatives to taking the subject property before voting to condemn the land) the City conducted such studies after its mayor and city council voted to condemn the Edwardses' land on February 9, 1994. The superior court, thus, granted the City's motion for summary judgment, denied Weir and the Edwardses' joint motion for summary judgment and remanded the proceedings for a special master to determine the amount of compensation due.[1]

The issue of necessity for taking property is a matter of legislative discretion which will not be judicially controlled unless the authority acted in bad faith or beyond its powers. *City of Atlanta v. Heirs of Champion*, 244 Ga. 620, 621 (261 SE2d 343). The term "bad faith" is equated with conscious wrongdoing motivated by improper interest, fraud or ill will. *Concept Capital Corp. v. DeKalb County*, 255 Ga. 452, 453 (3) (339 SE2d 583). The presence of such intent is for the superior court upon de novo review and the superior court's findings in this regard are reviewable under an "any evidence" standard. *Habersham Downs Homeowners' Assn. v. Dept. of Transp.*, 212 Ga. App. 686 (442 SE2d 868). See *Craven v. Ga. Power Co.*, 248 Ga. 79, 80 (281 SE2d 568). Although the case sub judice appeared before the superior court upon opposing motions for summary judgment, the superior court stated in its summary judgment order that the matter of the City's intent is "subject to de novo review. . . ." Thus, contrary to the majority's statement that "the record does not reflect that the superior court . . . acted in its capacity as factfinder," I believe the superior court properly defined its role as factfinder before adjudicating the issue of the City's alleged bad faith and that the City properly resolved this subjective question of fact. I therefore believe that this Court must apply an "any evidence" standard in reviewing the superior court's findings. See *MARTA v. Central Parking System of Ga.*, 167 Ga. App. 649, 652 (3) (307 SE2d 93). It is from this perspective that I find the superior court's evidentiary findings supportive of that court's determination that the City was not improperly motivated when its officials voted to condemn the subject properties. See *Threatt v. Fulton County*, 266 Ga. 466, 471 (6) (467 SE2d 546). Further, I do not agree with the majority that evidence of

---

[1] Although the issue of valuation remains in the trial court, it appears this Court is vested with jurisdiction to consider the direct appeal of this interlocutory order because the superior court granted the City's motion for summary judgment. Compare *Rabon v. Dept. of Transp.*, 221 Ga. App. 629 (472 SE2d 105), and cites.

the City's appointment of Stephen T. Boland to facilitate the "Dosser House" sale bears on the City's alleged bad faith in condemning any portion of that property. Absent conclusive proof that the City's mayor and city council authorized Stephen T. Boland's unauthorized representations regarding the City's purported decision not to condemn any portion of the "Dosser House" property, or that the City's mayor and city council were aware of such a statement, I would affirm the superior court's conclusion that Stephen T. Boland's unauthorized statements do not estop the City from condemning a portion of that property. "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the act of any officer done in the exercise of an unconferred power." OCGA § 45-6-5.

It is my view that the superior court did not err in granting the City's motion for summary judgment, denying Weir and the Edwardses' joint motion for summary judgment, and remanding the proceedings for a special master to determine the amount of compensation due.

I am authorized to state that Chief Judge Andrews and Judge Eldridge join in this dissent.

ELDRIDGE, Judge, dissenting.

The "bad faith" in this case arose from reckless or false representations made to induce the sale of the subject property by the City of Marietta to the condemnees that the City had no plans to widen the street and to take by eminent domain part of what it sought to sell to the condemnees. The "bad faith" did not arise after the condemnees owned the land and the City of Marietta sought to reacquire part of it to widen the street. None of this would have resulted had the City of Marietta kept what it needed for the street widening and sold the remainder to the condemnees or told them that there was a strong possibility of the street widening. Clearly, the City of Marietta was at fault in selling the property and then granting building permits and use permits for the upgrading of the property without fair warning that the fair market value of the property as a business could be adversely affected by its plans to widen the street by reacquiring part of the property. The condemnees' remedy is either in receiving full and adequate compensation in the condemnation action or another action to recover damages that cannot be recovered in condemnation, i.e., OCGA § 13-6-11 expenses of litigation for bad faith. To bar eminent domain is an extraordinary remedy, rarely granted.

Bad faith under any action for eminent domain that will bar a taking has a different meaning than it does for other areas of law. " '[I]n the context of abuse by a public officer of his official discretion, the term "bad faith" has been sharply distinguished from negligence

or bad judgment and has been equated with conscious wrongdoing motivated by improper interest or by ill will(,)' and that '(t)he term "bad faith" has been used side by side with the word "fraud" in describing those exercises of official discretion to condemn lands with which the courts will interfere.' " *Concept Capital Corp. v. DeKalb County*, 255 Ga. 452, 453 (3) (339 SE2d 583) (1986), quoting *City of Atlanta v. First Nat. Bank of Atlanta*, 246 Ga. 424, 425 (271 SE2d 821) (1980); see also *West v. Dept. of Transp.*, 176 Ga. App. 806, 807 (1) (338 SE2d 45) (1985). In condemnation cases, bad faith has been restricted to the basis for setting aside a condemnation as exceeding lawful authority to exercise eminent domain and not as the basis for damages. *Earth Mgmt. v. Heard County*, 248 Ga. 442 (283 SE2d 455) (1981).

"[OCGA § 22-2-82] provides that an authorized condemning body shall be the exclusive judge of the public need of property to be acquired and *the amount of property* to be acquired for the public purpose. [Cit.] The question of whether there is a necessity for taking the fee is a matter of legislative discretion, which will not be interfered with or controlled unless the authority acts in bad faith or beyond the powers conferred upon it by law. [Cit.] 'In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, as to the necessity, and what and how much land shall be taken.' [Cits.]" (Emphasis in original.) *City of Atlanta v. Heirs of Champion*, 244 Ga. 620, 621 (261 SE2d 343) (1979).

"Our holding in *Earth Management* did not erode the authority of condemning bodies nor change the law as pronounced in *Heirs of Champion* or *First Nat. Bank*. Rather, the import of that holding is that a condemning authority may not utilize the power of eminent domain to restrict a legitimate activity in which the state has an interest." *City of Atlanta v. Petkas*, 253 Ga. 447, 448-449 (321 SE2d 725) (1984).

While I agree with the majority that the conduct of the agents of the City of Marietta in the representations made and the way the sale of the property to the condemnees was carried out by the agents for the City of Marietta in a reprehensible fashion, such conduct nonetheless fell outside the condemnation action so that it must be brought as a separate cause of action either in tort or contract for damages not recoverable in this condemnation action for conduct prior to and unrelated to the condemnation; such conduct was not "bad faith" within eminent domain that would void the condemnation. The effect of the majority is to broaden the scope of what constitutes bad faith in condemnation to encompass all prior conduct between the parties relating to the property to be taken, even when not a part of any condemnation and is to shield such property for the

future from the exercise of eminent domain, no matter for what purpose the property is sought for public purposes.

"[If w]hat the condemnee is attempting to litigate is the liability, if any, of the condemnor based upon its alleged fraudulent conduct in connection with the negotiation and acquisition procedures which it utilizes[, then s]pecifically, condemnee points to the fact that business damages are recognized under *Bowers v. Fulton County*, 221 Ga. 731 (146 SE2d 884) (1966) and enhancement of value compensation is authorized by the rule of *Hard v. Housing Auth. of Atlanta*, 219 Ga. 74 (132 SE2d 25) (1963)." *Dept. of Transp. v. Franco's Pizza &c.*, 164 Ga. App. 497, 499 (297 SE2d 72) (1982) (Carley, J., concurring specially). In that event, appropriate damages would be recoverable in full and fair compensation for the property taken and consequential damages to the remainder of the property under this condemnation action.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 16, 1998 —
RECONSIDERATION DENIED JULY 29, 1998 — 

*Moore, Ingram, Johnson & Steele, John H. Moore, J. Kevin Moore*, for appellants.

*Haynie & Litchfield, Douglas R. Haynie*, for appellee.